WHELLKIN COAT COMPANY, IMPLEADED, ETC., RESPONDENT, v. LONG BRANCH TRUST COMPANY, APPELLANT.

Argued May 4 and 5, 1938—Decided September 27, 1938.

Before Justices TRENCHARD, PARKER and PERSKIE.

For the appellant, *John W. Slocum (Jacob Steinbach, Jr.,* of counsel).

For the respondent, *McCarter & English (Sidney R. Pine,* of counsel).

The opinion of the court was delivered by

PARKER, J. The case arose out of damage done to certain furs belonging to the respondent and contained within a building owned and operated by the appellant Trust Company. It appears without substantial dispute, except as hereafter noted, that the rooms in the building were rented in subdivisions to two or more tenants, the owner retaining control of the passageways and roof. One of these tenants was George Silberstein who joined in the action below as a plaintiff, as to whom there was a judgment for the defendant, and from which he apparently does not appeal. The plaintiff, Whellkin Coat Company, entrusted to Silberstein a quantity of furs for the purpose of having the same treated in some way by him, and while these furs were in the premises of which he was a tenant they were damaged by water which was due to a leaky condition of the roof of the building. There was a judgment for the Coat Company in the District Court of $400 besides costs, and the defendant appeals.

The case was tried at great length and we have before us a voluminous state of case of some two hundred and thirty typewritten pages consisting of a stenographic report of the trial and other matters pertinent to the litigation. There are forty-four specifications of error running over some twenty pages, and the brief for the appellant of forty pages. Many of the specifications are technically faulty as, for example, that the court admitted testimony to this or that effect, or upon this or that subject; and such specifications have

naturally not been considered. The other specifications are grouped in the brief under ten points.

It may as well be noted at this point that a great deal of the evidence related to the claim of Silberstein, which, as we have said, was rejected by the court; and so far as the evidence refers to his claim alone it naturally has no place in this appeal. We confine our consideration of the matter to the question of liability on the part of the Trust Company appellant and the trial proceedings as regards that company.

The general theory of recovery was, of course, based upon the proposition that Silberstein as a tenant doing business as a treater of furs, received the property of the Coat Company in the normal course of his business; that this property was lawfully on the premises and as of right and not by mere license; that it was the duty of the owner of the building to exercise reasonable care to see to it that the roof was kept in reasonable repair, not only as regards the safety of persons within the building, but also as respects property lawfully there; that that duty was not performed and that the damage resulted in consequence. We think that this theory is supported by a long line of cases, among which the following may be cited, viz.: *Perry* v. *Levy,* 87 *N. J. L.* 670, in which case a ceiling fell because of leakage in the roof, falling on the head of a tenant; *O'Brien* v. *Staiger,* 101 *Id.* 526, in which there was a leaky roof and the water collected on the kitchen floor of an apartment and plaintiff slipped and fell thereon; *Ionin* v. *E. D. & M. Corp.,* 107 *Id.* 145, in which the facts were substantially similar to those in Perry *v.* Levy; *Bland* v. *Gross,* 10 *N. J. Mis. R.* 446 (ceiling fell on tenant's head); *Sidway* v. *Greater Atlantic Finance, &c., Co.,* 12 *Id.* 83 (roof used for drying clothes defectively maintained so that tenant fell thereon); *Buckalew* v. *New Brunswick,* 113 *N. J. L.* 338 (market shed rented in sections to hucksters and roof collapsed). We do not think it is claimed for the appellant that this rule is confined merely to persons and does not apply to property, but if such claim is made we think it is without substance.

The briefed argument for the appellant is presented under ten points, which will be considered in order.

The first point seems to be that the court erred in refusing to honor the defendant's demand before trial for a copy of the written lease under which Silberstein held as tenant. We fail to see any merit in this point, for the principal reason that the defendant Trust Company was a party to the lease and had itself executed the lease, which was offered in evidence by the defendant at the trial and a copy of which takes up some fourteen pages of the state of case. It is therefore manifest that if any technical error was committed by the refusal of the court, which we do not concede, it was manifestly harmless, as the defendant knew all about the lease before the suit was even begun.

The second point reads as follows:

"The court should have granted the motion for a nonsuit on plaintiff's opening, it appearing then that there was no contractual relation between the defendant and the Whellkin Coat Company, and no duty owed to the Whellkin Coat Company, Inc., by defendant, the Whellkin Coat Company having been simply a bailor in placing their goods in the hands of the other plaintiff, George Silberstein for processing."

As to this point, we are unable to see that any contractual relation between the plaintiff and the defendant was necessary any more than a contractual relation would be necessary in a case where a visitor to a tenant in a tenement house sustains injury because of the defective condition of a staircase. Such cases are an everyday matter. The furs were on the premises in the course of Silberstein's legitimate business and were therefore in that place by invitation in the legal sense of the term.

The third point is that "the court erred in permitting the witnesses, George Silberstein and Morris Popkin, to testify from a bill of particulars that had been admittedly prepared by the counsel for the plaintiff after the suit was brought."

As to George Silberstein, this point need not be considered because the specification (No. 5) relating to him is faulty because general in terms and not specific.

As to Popkin, the situation was this: He testified that he was an officer of the plaintiff corporation and was familiar with the goods that were on Silberstein's premises; that they were sent back and found to be spoiled and were thrown out as waste; that he looked up the records of the plaintiff in New York and had himself given the answers to the bill of particulars to the plaintiff's attorney for the purpose of serving on the defendant; that every garment sent to Silberstein had a number and was checked up when it came back, and the damaged ones were counted. He was allowed to refresh his memory by referring to this bill of particulars, and we think properly. *Goodman* v. *Lehigh Valley Railroad Co.*, 82 *N. J. L.* 450; *Mausert* v. *Mutual Distributing Co.*, 94 *Id.* 222.

The fourth point reads as follows:

"The court should have permitted the plaintiff's counsel [*sic:* we assume that defendant's counsel is meant] to interrogate the witnesses for the plaintiff as to whether or not they would have any monetary loss by the alleged negligence of the defendant, and to have shown affirmatively that they did not sustain any such loss."

The brief does not so state, but obviously this point is directed to the alleged fact that the plaintiff Silberstein had been reimbursed for the loss by some insurance company. This is denied by the plaintiff as a matter of fact, but even if it be true, and even if the Whellkin Company had been insured, that fact would not have militated in any way against their right of recovery for a legal wrong. *Weber* v. *Morris & Essex Railroad Co.*, 36 *N. J. L.* 213, 215.

The fifth point challenges the admission of certain testimony indicating that after the injury done to the plaintiff's goods, the roof had been repaired. It seems to be settled that testimony of this kind is permissible provided it is restricted to its legitimate end, namely, as an indication of the condition existing at the time of the alleged wrong. *Perry* v. *Levy, supra; Taylor* v. *Majestic Building and Loan Association,* 14 *N. J. Mis. R.* 699.

The sixth point is that the nonsuit should have been granted against the respondent at the close of the plaintiff's case because the lease was withheld from evidence. However, the lease was admitted in evidence later on, and on well recognized principles this cured any possible error in refusing to require it to be put in under the plaintiff's case.

The seventh point refers to a number of questions asked of defendant's witness Hubert Starr on cross-examination, and plaintiff's witness O'Kane in rebuttal. Starr testified that he was a roofer and that in 1936, about a year before the damage in question, he put the roof on the defendant's building. He described the roof and testified that it was a good roof and guaranteed for ten years. He testified also that it was a felt one, and the proper way was to put it on up and down and not horizontally as claimed by plaintiff. On cross-examination the plaintiff asked a number of questions, which were objected to and now are challenged as error, amounting to an inquiry whether the witness knew anything about the Johns Manville specifications for roof and the method of constructing same, and the witness testified, without objection, that he had worked on Johns Manville roofs and could put on a roof in accordance with their specifications. Then he was asked whether he had ever done it and answered, no. Defendant's counsel objected to that as not material or binding. However, the objection to this question and the answer to the succeeding question came only after the answer was in. Moreover, the court pointed out that he was under cross-examination as an expert, and we think properly ruled that the questions were not illegal.

The plaintiff recalled the witness O'Kane in rebuttal to testify, as he did testify, that, according to the specifications for a Johns Manville roof, the flashings run horizontally and not vertically. As we understand the theory of all this, the plaintiff's claim was that the vertical arrangement was not a good arrangement, that the Johns Manville construction was a good construction and approved, and that the Johns Manville was horizontal instead of vertical. The testimony

was obviously intended to discredit the claim made by the defendant that the roof was well and properly constructed. We see no harmful error.

The eighth point is that the court erred in denying a motion to direct a verdict in favor of the defendant as against the present respondent. As we understand the briefed argument of this point, it is that the written lease to Silberstein provided, among other things, that there should be no subletting or underletting and that the landlord should not be liable for any damage or injury by water. The language of the lease, which, as we have said, was admitted in evidence, is that the landlord shall not be liable for any damage or injury by water, which may be sustained by the said tenant or other person, &c. Whatever might be the effect of this clause as regards Silberstein, who, as already noted, was held not entitled to recover and suffered an adverse judgment, we do not think that Silberstein was entitled to contract away any rights that the plaintiff might have as a matter of law for injury to its property lawfully on the premises and due to the negligence of the defendant. The argument in the brief, which seems to be quite lengthy on this point, appears to rest on the ground that there was some sort of contractual relation subsisting between the plaintiff and defendant by virtue of the lease between the defendant and Silberstein, but we are unable to discern any such contractual relation. The relation that was claimed and which the jury found was proved, was that of a third party whose goods were legally upon the premises by invitation and to whom the defendant, by reason of such invitation, owed the duty of reasonable care with respect to such property.

This substantially covers also the ninth point which reads: "that the court should not have ruled that the lease did not apply to Whellkin Coat Company, Inc., and should not have permitted it to be inferred that there was no necessity for the Whellkin Coat Company, Inc., to be invited on the premises by the defendant."

We do not quite understand what this language means, but are clear that the court was entirely right in saying that the

Whellkin Coat Company was not bound by the lease. It is suggested that it was error to refuse to let the lease go with the jury to the jury room, but we think that that was right. The lease was properly admitted as regards the plaintiff Silberstein, and while he was still in the case, but became irrelevant after his claim was removed from the consideration of the jury.

The tenth point is that the court failed to charge correctly the rules as to negligence under the theory on which the case was sent to the jury.

In support of this point the appellant invokes specifications Nos. 39 and 40, which attack the refusal of the court to charge certain requests. Request No. 10 is covered by specifications No. 39 and No. 40, both of which say that "the only obligation of the defendant was to use reasonable care to any one to whom it held out an invitation to enter upon and use its property." These, we think, were covered by the general instructions of the court that the landlord was under the responsibility of a general owner of real estate who holds out an invitation to others to enter upon and use his property.

The forty-first specification invokes the request to charge that "the landlord must not be chargeable with negligence unless it had failed to repair the leak when (1) it had in fact been brought to its previous notice, or (2) it had existed for a space of time which time would have made it possible for the landlord to inspect the roof and make repairs. Neither had been shown and, therefore, judgment should be for the defendant." The vice of this request is in the last sentence which required the court in the charge to take the case from the jury, whereas there was clearly a case for them to consider.

The eleventh and last point is general and is covered by what has already been said.

We find no harmful error and conclude that the judgment should be affirmed.