43 N.J. Super. 23 (1956)
127 A.2d 431
GEORGE B. HANSSON, PLAINTIFF-RESPONDENT,
v.
CATALYTIC CONSTRUCTION COMPANY, A CORPORATION, ETC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 1956.
Decided December 5, 1956.
*25 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. George W. Connell argued the cause for the defendant-appellant (Messrs. Shaw, Pindar, McElroy & Connell, attorneys).
*26 Mr. Harry Chashin argued the cause for the plaintiff-respondent (Messrs. Cruden & Fitzpatrick, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
This is an appeal from a judgment of $9,500 in favor of the plaintiff entered on a jury verdict for personal injuries allegedly resulting from defendant's negligence, and from the denial of defendant's motion for a new trial.
The defendant was engaged by the Tidewater Associated Oil Company to remove "case heads" from the top of 12 large catalytic tanks, which were to be cleaned and repaired. Since each case head weighed more than five tons, the defendant rented a crane with equipment including a 100-foot boom and a 30-foot jib. While removing the first case head, the boom of the crane buckled and the case head crashed against a building in which the plaintiff, an employee of Tidewater, was working. In attempting to reach a place of safety, the plaintiff fell and was injured.
Mr. Charles J. Crowley, an employee of the defendant in charge of the crane operation, testified for the plaintiff that he initially refused to remove the case head with the crane as he "didn't think it was safe," but that despite his objection he was directed to proceed by defendant's assistant superintendent. Frank Tamburri, the operator of the crane, testified for the defendant that before the accident he had inspected the crane; that it was in "A-1 condition"; that he lifted the first case head about a foot and a half, and held it suspended for about five or ten minutes until "they decided what to do"; that, upon receiving a signal, he "picked it up three and one-half feet to clear the fence and in swinging out the boom started buckling." He testified that in the removal of the case head the 100-foot boom with the 30-foot extension jib was used, and that the crane was capable of lifting 12 or 13 tons. Additionally, on cross-examination, he was permitted to testify, over objection, that the remaining case heads were removed without further incident *27 with the same crane but using a 105-foot boom without a jib. On cross-examination, the defendant's supervisor was permitted to give similar testimony.
The defendant urges as reversible error the admission into evidence of the foregoing testimony, to the effect that subsequent to the accident the method of removing the case heads was changed.
It is the general rule that evidence of changes and repairs made subsequent to an injury, or of subsequent precautions, is not admissible as showing negligence or as an admission of negligence. Perry v. Levy, 87 N.J.L. 670 (E. & A. 1915); Schwartz v. Federal Deposit Insurance Corp., 127 N.J.L. 556 (E. & A. 1942); Rynar v. Lincoln Transit Co., Inc., 129 N.J.L. 525, 530 (E. & A. 1943); 2 Wigmore on Evidence (3d ed., 1940), § 283, p. 151. Exceptions to this rule have been recognized where the evidence is offered to establish control over the injuring instrumentality, Perry v. Levy, supra; Pirozzi v. Acme Holding Company of Paterson, 5 N.J. 178 (1950); to prove the condition existing at the time of the accident, Millman v. U.S. Mortgage & Title Guaranty Co., 121 N.J.L. 28 (Sup. Ct. 1938); Whellkin Coat Co. v. Long Branch Trust Co., 121 N.J.L. 106 (Sup. Ct. 1938); to affect the credibility of a witness, Lombardi v. Yulinsky, 98 N.J.L. 332 (Sup. Ct. 1923); or to show a different method was feasible for avoiding the danger, Apgar v. Hoffman Construction Co., 124 N.J.L. 86 (E. & A. 1940). See Report on the Committee on the Revision of the Law of Evidence to the Supreme Court of New Jersey, dated May 25, 1955, Rule 51, at page 102, and Report of the Commission to Study the Improvement of the Law of Evidence (J.R. 1955), November, 1956, Rule 51, at page 47.
Here, none of these exceptions obtains. The evidence was not offered to prove the condition of the boom or crane at the time of the accident or to affect the witnesses' credibility, nor was there any dispute regarding control of the crane or the feasibility of a different method of removal. Thus, the evidence was inadmissible. Its admission would *28 tend to defeat the policy of encouraging, rather than discouraging, remedial safety measures taken in order to prevent the recurrence of a similar accident. McCormick on Evidence (1954), § 252, p. 543; see also Spinelli v. Golda, 6 N.J. 68, 78 (1950) and Daniels v. Brunton, 7 N.J. 102, 110 (1951).
The plaintiff cites cases from other jurisdictions as authority for an exception additional to those above mentioned, i.e., that evidence of subsequent remedial measures may be admitted to prove the cause of the injury, Wigmore on Evidence, supra, § 283, p. 159, note 3; 170 A.L.R. 7, 52; urging that here he should have been permitted to show that overloading of the boom, rather than a latent defect as claimed by the defendant, caused the plaintiff's injuries. The overloading, he argues, was occasioned by the use of the jib at the end of the boom, increasing not only its length but the maximal stress thereon. However, the inference thus sought to be drawn from the elimination of the jib is not valid as it is clear from the evidence that the removal of the other case heads was with a different boom from the one which buckled. Thus, the fact that measures were taken to reduce the stress on the second boom after the accident in no way proves or disproves that the first boom was latently defective.
Thus, we find that the admission of testimony that subsequent to plaintiff's injury the defendant changed the equipment used for the removal of the case heads was erroneous, and since it was inconsistent with substantial justice, it constitutes reversible error. R.R. 1:5-3(b); R.R. 2:5.
The plaintiff contends that reversal should be denied since defendant's objections to the erroneously admitted testimony were not specific, being merely on the basis of immateriality and irrelevancy. These terms are often used interchangeably, but "immaterial" more precisely denotes evidence which is offered to prove a proposition which is not at issue, whereas "irrelevant" denotes evidence which does not logically tend to establish any material proposition. McCormick *29 on Evidence, supra, § 152, p. 315; James, "Relevancy, Probability and the Law," 29 Calif. L. Rev. 689 (1941); 20 Am. Jur., Evidence, §§ 245-246, pp. 238-240; Uniform Rules of Evidence, Rule 1 (2). Thus, it is apparent that evidence of subsequent remedial action, offered to prove negligence, is not immaterial; negligence is clearly a matter in issue. But is it relevant? There is persuasive authority for the view that evidence of remedial measures is excluded not because it lacks relevancy, but because the court to refrain from discouraging such measures, declares it incompetent. Perry v. Levy, supra; McCormick on Evidence, supra, § 77, p. 159; Falknor, "Extrinsic Policies Affecting Admissibility," 10 Rutg. L. Rev. 574, 590 (1956). However, though in many instances the question of policy takes precedence, relevancy is also an integral factor in the admission of such evidence. Millman v. U.S. Mortgage & Title Guarantee Co., supra, 121 N.J.L., at p. 33; 2 Wigmore on Evidence, supra, § 283, p. 159. And objection on that ground in such cases is commonplace in our courts. Thus, the trial court was sufficiently apprised of the grounds upon which defendant's objection rested. Cf. Jones v. Lahn, 1 N.J. 358 (1949), where the grounds of immateriality and irrelevancy were found not to be sufficiently specific, since the evidence was admissible for one purpose but not for another.
Defendant also urges that it was prejudiced by two events which took place at the trial, and, because they present questions of general interest, we will briefly consider them. They are: (1) that the jury was advised defendant carried liability insurance, and (2) that one of the jurors spoke to plaintiff's physician and witness, Dr. Boyle, during recess.
The jury, it is contended, was apprised that defendant carried liability insurance by the following examination of juror No. 12 by plaintiff's counsel on voir dire:
"Mr. Stern: Juror No. 12, I notice you are a claims adjuster.
Juror: Before going any farther, our office handled that claim. That is where the crane broke and went through the building." *30 Defendant's counsel made a motion for a mistrial which was denied, but the offending juror was excused. The inference that the defendant is covered by insurance is clear from the answer volunteered by the juror. And, according to settled law, the introduction of such evidence is ordinarily grounds for a new trial. Sutton v. Bell, 79 N.J.L. 507 (E. & A. 1910); see 2 Wigmore on Evidence, supra, § 282(a), p. 131; 4 A.L.R.2d 871 (1949). Yet the juror's outburst was spontaneous and in answer to a question proffered by counsel in his efforts to select a disinterested and thus impartial jury.
While the selection of an impartial jury is of such concern that in order to determine any disqualifying interest great liberality is afforded counsel in his examination of jurors, he may not, under that guise, use his inquiries as a vehicle for imparting to the jury the impression that his adversary's losses will be absorbed by an insurance carrier. Such an artifice, it is apparent, would tend to create partiality and, hence, prejudice in the minds of the jurors, and it is inconsistent with the fundamental purpose of the examination. In a case pertaining to the disclosure of liability insurance by inquiries on voir dire, our former highest court in Patterson v. Surpless, 107 N.J.L. 305, 308 (E. & A. 1930) stated that:
"* * * when counsel deliberately seeks to inject into a cause an element which has, and is designed to have, the effect of prejudicing the rights of one or the other of the litigants, it is the duty of the judge to guard against such effect, either by arresting the trial in limine, as was requested in the present case, or by guarding against the pernicious results through proper instruction to the jury. * * *"
However, the trial judge in the instant case, in his colloquy on the motion to dismiss, stated that the objectionable information was not deliberately solicited, but was accidental. See Bashaw v. Eichenberger, 100 N.J.L. 153 (E. & A. 1924). The ruling on a motion for mistrial is discretionary with the trial judge, and unless such discretion is abused, will not be disturbed. Bradley v. D.E. Cleary Co., 86 N.J.L. 338 *31 (E. & A. 1914); Hurley v. Sternick, 3 N.J. Misc. 1048 (Sup. Ct. 1925). We are of the opinion that the disclosure in the instant case, though accidental, was so flagrant as to jeopardize an impartial hearing.
The final question concerns the conversation during recess between one of the jurors and a witness, Dr. Boyle. A similar situation was presented in Lawrence v. Tandy & Allen, 14 N.J. 1, 10 (1953). There, as here, the court investigated the incident and satisfied itself that the nature of the conversation was not such as to prejudice the defendant's right to a fair trial. However, in the instant case, unlike the Lawrence case, counsel did not acquiesce in the court's ruling and so did not waive his right to review. Investigation disclosed that Dr. Boyle's conversation with the juror comprised merely a greeting by the latter which was returned by the doctor who had once treated her. This court, in Jardine Estates, Inc. v. Donna Brook Corp., 42 N.J. Super. 332 (App. Div. 1956), quoted from State v. Auld, 2 N.J. 426, 432 (1949), as follows:
"`If the record showed affirmatively the defendant had been prejudiced by the improper communication there would be reversible error. Likewise if the record failed to show whether or not the communication was prejudicial it would be presumed to be so, and be cause for a reversal. "On the other hand if the record shows affirmatively that the communication had no tendency to influence the verdict * * * [it] * * * does not require a reversal."'"
We find no error in the court's ruling on this point.
Defendant further contends on this appeal that the verdict of the jury was excessive, but, since the cause is to be remanded for a new trial for the reasons already discussed, it is unnecessary to consider the question of damages.
For the reason first above stated the judgment is reversed and the cause remanded for a new trial.