116 N.J. Super. 211 (1971)
281 A.2d 539
GEORGIANA RYAN, INDIVIDUALLY, AND AS ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF RAYMOND M. RYAN, DECEASED, AND CORDELIA RYAN, AN INFANT BY HER GUARDIAN AD LITEM, GEORGIANA RYAN, PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS,
v.
THE PORT OF NEW YORK AUTHORITY, A BODY POLITIC AND CORPORATE, DEFENDANT-APPELLANT AND CROSS-RESPONDENT, AND PATRICK M.J. MALONEY AND BONITAS YOUTH SERVICE, INC., A NEW JERSEY CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1971.
Decided September 22, 1971.
*213 Before Judges KILKENNY, LABRECQUE and LANE.
*214 Mr. Francis A. Mulhern argued the cause for defendant The Port of New York Authority (Mr. Sidney Goldstein of the New York Bar, of counsel; Mr. George Milanos, on the brief).
Mr. Robert C. Garofalo argued the cause for plaintiffs (Messrs. Ryan, Foster & Garofalo, attorneys; Mr. Garofalo, of counsel; Mr. Richard H. Foster, on the brief).
The opinion of the court was delivered by LANE, J.A.D.
Plaintiff Cordelia Ryan, an infant, recovered a judgment against defendants for her personal injuries in the amount of $13,800. Plaintiff Georgiana Ryan recovered a judgment for medical expenses of Cordelia Ryan and for loss of services against defendants in the amount of $3,100. She further recovered a judgment as administratrix of her husband's estate in the amount of $150,000.
The complaint was based upon an automobile accident that occurred January 27, 1967 at approximately 1.20 P.M. between an automobile being operated by Cordelia Ryan in a westerly direction on the upper level of the George Washington Bridge and a Ford Econoline van motor vehicle owned by defendant Bonitas Youth Service, Inc. and being operated by its agent, defendant Maloney, in an easterly direction. As a result of the accident Raymond M. Ryan, Cordelia's father and a passenger in the automobile, sustained injuries that resulted in his death. Cordelia Ryan sustained serious personal injuries. Plaintiffs contended that the Port Authority was negligent "in permitting vehicles of the type operated by defendant Maloney on the upper level of the George Washington Bridge at the time of the accident due to weather conditions involving rain, wet and slippery road surfaces and extremely high, stormy winds."
*215 Defendant Port of New York Authority appeals alleging that the trial court erred (a) in denying its motion for a judgment of dismissal at the close of plaintiffs' case in that plaintiffs failed to prove that the Port Authority was negligent in allowing co-defendant Maloney's vehicle to traverse the George Washington Bridge; (b) in denying the Port Authority's motion for judgment of dismissal in that plaintiffs failed to prove that the Port Authority had notice of hazardous wind conditions before the accident, and (c) in admitting into evidence testimony that the bridge was closed to van vehicles 50 minutes after the accident as well as two other dates after the accident. Plaintiffs cross-appeal, alleging that it was error to remove from the case the issue of negligence of the Port Authority based upon the failure to post warning signs.

I

A
The Port Authority recognizes that it was under an obligation to exercise reasonable care in its operation of the George Washington Bridge. Cf. Monaco v. Comfort Bus Line, Inc., 134 N.J.L. 553 (E. & A. 1946); McCabe v. N.J. Turnpike Auth., 35 N.J. 26 (1961). It argues:
* * * the basic issue presented in this case is whether or not there was proof of any standard of reasonable care to which the Port Authority failed to conform. Stated differently the issue is whether or not the Port Authority knew or should have known that the entry of Maloney's vehicle on the Bridge at the time created an unreasonable risk of harm to other users of the Bridge.
To establish a standard of reasonable care, plaintiffs introduced into evidence a memorandum dated February 1, 1966 from Captain Robert Friend, in charge of the George Washington Bridge for the Port Authority, which set forth a guide for determining when the bridge should be closed to certain vehicles such as the Ford Econoline van. The memorandum stated in part:
*216 This memo will serve as a guide for determining when certain type vehicles should be barred from using the George Washington Bridge.
1. When wind velocity exceeds 30 miles per hour.
2. When such winds blow in a north and south direction with respect to the main span.
It was conceded that the memorandum was used at least as a guide by the Port Authority. There was evidence that it was considered as a rigid standard by at least one Port Authority tour commander. The memorandum tended to show "that the defendant had knowledge of a kind of protection suitable under certain circumstances." Smith v. Boston & M.R.R., 87 N.H. 246, 177 A. 729, 739 (Sup. Ct. 1935). It constituted an admission that the Port Authority "perceived the risk and deemed the precaution appropriate and feasible." 2 Harper and James, The Law of Torts (1956), § 17.3 at 977, 981. See also, 2 Wigmore on Evidence (3d ed. 1940), § 282 at 131, 132; Id., § 461 at 488, 501.
It is quite obvious that if the jury found that the Port Authority departed from its own guide and that such departure was a proximate cause of the accident, its verdict finding that the Port Authority failed to exercise reasonable care in the operation of the George Washington Bridge was supported.
The question, therefore, is whether plaintiffs established that the wind velocity and direction before the happening of the accident was such that the Port Authority under the February 1, 1966 memorandum as interpreted by it should have as a reasonable precaution closed the bridge to the Ford Econoline van.
Defendant argues that there was no evidence that it deviated from the standard of care to a sufficient degree to show a breach of its duty. This question depended in part on the interpretation of the memorandum. Plaintiff introduced evidence to show that the memorandum, even if only a guideline, was used at certain times when the use of the bridge was banned to certain vehicles.
*217 Even assuming that the memorandum was not to be applied with flexibility, there was evidence from which the jury could have found that defendant should have closed the bridge to certain vehicles, including the Econoline van, on the day of the accident. The evidence was that the winds were from a northeasterly direction and were gusting over 30 miles per hour. The jury could have determined that the memorandum indicated that whenever the winds were blowing to this extent and to some degree from the north or the south, the vehicles should be banned.
Furthermore, if the jury found that the standard was flexible, there was sufficient evidence to indicate that a flexible standard of care was breached. This was indicated in part by the fact that on other occasions under similar weather conditions, the bridge was closed to these vehicles.
Plaintiffs adduced sufficient evidence from which the jury could have found that the Port Authority failed to exercise reasonable care in failing to ban the Ford Econoline van from the use of the bridge.

B
Although the Port Authority admits that it "had foreseen that a possibility that a van-type vehicle traversing the Bridge might become unstable because of high winds," it contends that the evidence did not show that it had any notice on the date of the accident of winds "of a force which would have necessitated a ban of van-type vehicles." Plaintiffs introduced evidence through a meteorologist from which the jury could have found that the winds were such in the morning of the day of the accident as to create a hazardous condition under the terms of the February 1, 1966 memorandum as interpreted by the Port Authority. The meteorologist testified that on the morning of January 27 there were east to northeast winds of 15 to 20 miles per hour, gusting as high as 25 to 35 miles per hour.
*218 The trial court was required to deny the motion for judgment of dismissal if the evidence, together with all the legitimate inferences therefrom, could sustain a verdict for the plaintiffs. R. 4:37-2(b); Dolson v. Anastasia, 55 N.J. 2, 5 (1969). It could not weigh the evidence or make any specific findings of fact but had to accept all evidence produced by plaintiffs as true. Bell v. Eastern Beef Co., 42 N.J. 126, 129 (1964); Hindle v. Morrison Steel Co., 92 N.J. Super. 75, 81 (App. Div. 1966). The motion for a judgment of dismissal was properly denied.

II
The trial court admitted into evidence an answer to an interrogatory by the Port Authority setting forth the dates when the upper level of the bridge was closed to vehicles such as the Ford Econoline van during 1966 and 1967. The answer to the interrogatory was:
During 1966 no closings to certain types of vehicles due to wind conditions. During 1967, there were bans to certain types of vehicles, utility trailers, house trailers, bus-type station wagons, foreign and domestic, any empty trailer meriting special attention of the Sergeant or Tour Commander. Ban occurred on January 27, 1967, at 2:10 P.M. Winds were from twenty-five miles per hour to thirty miles per hour. Ban occurred on April 28, 1967, 9:30 A.M., winds in excess of thirty miles per hour. Ban occurred on May 24, 1967, 1:40 P.M., winds in excess of thirty miles per hour.
The Port Authority contends that the admission of this answer to the interrogatory into evidence was prejudicial error. Its argument is based upon Rule 51 of the Rules of Evidence which states:
When after the occurrence of an event remedial or precautionary measures are taken, which, if taken previously would have tended to make the event less likely to occur, evidence of such subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event.
*219 The clear language of the rule indicates that while the evidence is inadmissible as an admission of negligence, it may be introduced for other purposes. Cf. Hansson v. Catalytic Construction Co., 43 N.J. Super. 23, 27 (App. Div. 1956).
Plaintiffs through their meteorologist had established the wind conditions at the time of each of the three closings of the bridge. The answer to the interrogatory was admitted by the Trial court to show the interpretation of the February 1, 1966 memorandum by the employees of the Port Authority and to show how the standards set forth in that memorandum were applied. The evidence was clearly relevant to show when defendant Port Authority perceived there was a hazardous condition which would require it in the exercise of reasonable care to take the precaution of closing the bridge.
The most strenuous argument of the Port Authority is directed to the evidence concerning closing of the bridge 50 minutes after the accident. It contends in its brief that this closing was "a normal reaction on the part of those in charge of the Bridge" taken as a result of the accident. That contention is completely unsupported in the evidence. The Port Authority called no witnesses and offered no testimony whatsoever to show that the closing 50 minutes after the accident was anything other than a closing taken under the February 1, 1966 memorandum of Captain Friend.
Under the circumstances that existed at the trial, the admission of the answer to the interrogatory was proper.
We note that the trial court was careful in its charge to the jury to instruct them correctly as to the use of the evidence of the closings of the bridge. The jury was instructed:
You will also recall testimony by way of depositions of the various officers as to the nature and effect of the memorandum. I also want to caution you and I have admitted into evidence the opinions of Mr. Gosset and the Answers to Interrogatories by the Port of New York Authority and other evidence concerning the ban imposed at 2:10 P.M. on January 27, 1967, and the two subsequent dates only for the purpose of assisting you if this evidence does, in determining the nature and meaning of the ban if proven to your satisfaction resulting *220 from the memorandum of Captain Friend and all the other circumstances.
This evidence may not be taken by you as remedial or precautionary measures, which, if taken previously, would have tended to make the accident less likely to occur. That is to say, it would be an improper inference for you to conclude that because the ban was imposed at 2:10 after the accident occurred when the winds were from 25 to 30 miles per hour if you so find and as contended by the Port, that, therefore, the Port was negligent in not imposing the ban before the accident.
We need not consider plaintiffs' cross-appeal.
The judgments in favor of plaintiffs are affirmed.