**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1136-23

MICHAEL A. LUCIANO, as
executor of the ESTATE OF
PAULINE JELKEN,

     Plaintiff-Appellant,

v.

PUBLIC STORAGE,

     Defendant-Respondent.

_____

Argued February 26, 2025 – Decided March 13, 2025

Before Judges Mayer and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1306-20.

David B. Glazer argued the cause for appellant (Glazer & Luciano, LLC, attorneys; David B. Glazer and Michael A. Luciano, on the briefs).

Colin P. Hackett argued the cause for respondent (Lewis Brisbois Bisgaard & Smith, LLP, attorneys; Colin P. Hackett and Georgia D. Reid, on the brief).

PER CURIAM

Plaintiff Michael A. Luciano, as executor of the Estate of Pauline Jelken (Jelken),[1] appeals from a December 1, 2023 order denying a motion for a new trial based on two evidentiary rulings by the trial judge. We affirm.

We recite the facts from the motion record and trial testimony. On July 4, 2018, Jelken, accompanied by a friend, Arlene Castello, went to defendant Public Storage to retrieve items she stored at that facility. It rained that day, and Jelken slipped and fell in a puddle of water in the lobby of defendant's premises. Castello saw Jelken fall.

Jelken reported her fall to defendant's employee. The employee mopped the puddle and placed a caution sign on the floor. Defendant's employee instructed Jelken and Castello to meet her in the main office to complete a report. Jelken and Castello told defendant's employee "step by step . . . what happened." Based on that information, defendant's employee completed a three-page incident report.

Jelken filed a personal injury action in June 2020. In October 2023, the jury heard testimony over two days. Jelken testified on her own behalf and presented testimony from Castello and her treating neurosurgeon, Dr.

---

[1] During the pendency of this appeal, Jelken passed away. In a September 30, 2024 order, we permitted Michael A. Luciano to file an amended notice of appeal designating himself as the executor of Jelken's estate.

A-1136-23

Mohammad Kahn. Defendant offered testimony from a forensic engineering expert, David Behnken, and an orthopedic expert, Dr. Kent Lerner. Defendant also presented the deposition testimony of Dover Police Officer Samuel J. Berthoud, who responded to defendant's facility after Jelken fell. Although Jelken retained an engineering expert who prepared a report produced during discovery, Jelken did not call her engineering expert at trial.

Prior to trial, the judge made two evidentiary rulings that are the focus of this appeal. The judge barred Jelken from introducing photographic evidence of the post-accident measures undertaken after Jelken fell, specifically the mopping of the floor and the placing of a caution sign. Additionally, the judge precluded Jelken's admission of the incident report prepared by defendant's employee.

Regarding the post-accident photographs, the judge asked Jelken's attorney to state the basis for introducing this evidence. Jelken's attorney explained he intended to use the photographs to demonstrate Jelken "got out [of the facility] safely."

The judge ruled the post-accident photographs were inadmissible under N.J.R.E. 407. The judge explained "the intent for which [Jelken's attorney was] providing the document . . . seems to be completeness of testimony. In this case

it goes more to the remedial measures that were taken by the defendant after [Jelken]'s accident. She can certainly testify as to the condition. They are pictures of the condition of the floor at the time of the accident." The judge further stated, "the mopping and the pictures with . . . the signage around it . . . was not the condition of the floor at the time of the accident."

Jelken's attorney sought to revisit the judge's ruling after defense counsel gave his opening statement. During opening argument, defendant's attorney argued the "floor that [Jelken] claims to have slipped on, you cannot slip on it . . . . [T]hat floor is slip-resistant . . . . You can pour all the water you want on that floor, you cannot slip." Jelken's attorney argued defendant sought to portray the floor as slip proof and contended the photographs demonstrating defendant's employee mopped the floor and placed a caution sign refuted the floor's safety.

The judge restated his earlier ruling that the post-accident photographs constituted subsequent remedial measures and were precluded under N.J.R.E. 407. The judge further explained Jelken "certainly had an opportunity to call an expert in this matter to . . . indicate that the floor was not slip proof."

The judge also precluded Jelken's attorney from using photographs of defendant's post-accident remedial measures to cross-examine defendant's engineering expert. During his direct testimony, Behnken stated the floor was

"highly slip resistant" and there was a "very, very low probability" of slipping on the floor even when wet. Jelken's attorney requested permission to ask Behnken about defendant's employee mopping the floor and placing a caution sign. The judge did not permit Jelken's attorney to ask the defense engineering expert about the post-accident measures taken by defendant's employee. The judge stated, "[t]he fact that an employee with no knowledge of the floor took some remedial action afterward to get that before the jury . . . [is a] subsequent remedial action [and] does not undermine [Behnken's] report."

During cross-examination, Jelken's attorney showed photographs of the puddles on the floor at the time of the accident to Behnken and asked the following question:

> [COUNSEL:] If you had been on that premises with your background, and you see the condition like this -- you, Mr. Behnken -- would you put up a sign advising people to be careful?
>
> [BEHNKEN:] I would not. This, you have a highly slip resistant concrete floor. The same condition you would find in a garage. If you pull your car into the garage when it's raining, you get out of your car. It's just [the] same kind of thing. It's highly slip resistant and safe for the intended use.

Jelken's attorney also sought to have his client read the incident report to the jury. Because defendant produced the incident report in discovery, Jelken's attorney argued Jelken could read the report to the jury.

The three-page incident report consisted mostly of questions for an employee to circle "yes" or "no" in completing the form. In the text portion of the incident report, defendant's employee wrote:

> We had a thunderstorm and it was raining when customer arrived to our property. This being our main lobby with high traffic. There was water (puddles) that came inside the lobby. Customer did mention that she slipped on water and fell on her right side (backside). Customer is in alot [sic] of pain but did refuse to call a[n] ambulance.

In objecting to Jelken's reading of the incident report to the jury, defense counsel argued the report was unauthenticated and inadmissible hearsay. The judge sustained the objection, determining the report "would need to be established through a testifying witness here on behalf of [defendant]. Since . . . there is no witness on the list, the document will not be admissible at this juncture." The judge further stated, "a representative would have to come testify with respect to the authenticity of the report to which established a business . . . record exception."

6

A-1136-23

At the conclusion of the testimony, the jury found Jelken failed to prove defendant was negligent.

Jelken filed a motion for a new trial based on the two evidentiary rulings by the judge. On December 1, 2023, after considering counsel's arguments and written submissions, the judge denied the motion.

Regarding evidence that defendant's employee mopped the puddle and placed a caution sign on the floor, the judge stated, "[a]llowing evidence . . . that defendant[] mopped the floor and/or placed caution signs in the lobby would violate Rule 407." Further, the judge explained "[t]hat defendant mopped or placed a caution sign in a lobby following plaintiff's fall [did] not establish that the floor was slippery or dangerous but the jury might jump to that conclusion based upon the post[-]incident remedial actions."

Regarding the ability to cross-examine Behnken about post-accident safety measures, the judge explained:

> [D]efendant's examination of [Behnken] did not open the door to the admission of the subsequent remedial measure photographs as the defendant did not question him regarding the subject matter.
>
> Likewise, [Jelken] prompting defendant to opine to a hypothetical whether he would place cautionary warnings about water does not open the door for admission of the incident report or the remedial photographs. . . . [Jelken's attorney] cannot seek to

bring forth those documents through [counsel's] own questioning of [Behnken] on cross[-]examination.

Further, [Behnken] provided expert testimony regarding the slip resistance of the floor. The photographs of what defendant did following the incident do not reasonably undermine or contradict his opinions as his opinions were based upon scientific testing.

Regarding the preclusion of the incident report, the judge stated:

It is [the] burden of the party offering the evidence to establish its admissibility which plaintiff has failed to do both at trial and here today. . . . [D]ocuments including the incident report may be provided in response to discovery demands but that does not mean that they are admissible during trial. . . .

. . . .

[Jelken] admitted she was not given a copy of the incident report . . . . In fact, she testified that she called the police in order to obtain a police report documenting the incident because she was not provided with a copy of the incident report. Accordingly, [Jelken] could not properly identify or authenticate the incident report as required by New [J]ersey Rule of Evidence 901. Further [Jelken] could not establish that the incident report . . . is a business record . . . because she could not establish the foundation for how [defendant] creates or maintains its documents or that the incident report was in fact the report prepared on or about the time of the incident.

On appeal, Jelken asserts the judge erred in denying the motion for a new trial, raising the same arguments presented to the trial court.

8

"The standard of review on appeal from decisions on motions for a new trial is the same as that governing the trial judge—whether there was a miscarriage of justice under the law." Hayes v. Delamotte, 231 N.J. 373, 386 (2018) (quoting Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 522 (2011)). "[A] 'miscarriage of justice' can arise when there is a 'manifest lack of inherently credible evidence to support the finding,' when there has been an 'obvious overlooking or under-valuation of crucial evidence,' or when the case culminates in 'a clearly unjust result.'" Ibid. (quoting Risko, 206 N.J. at 521).

"A jury verdict is entitled to considerable deference." Risko, 206 N.J. at 521. "It should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice." Baxter v. Fairmont Food Co., 74 N.J. 588, 597-98 (1977). "On a motion for a new trial, all evidence supporting the verdict must be accepted as true, and all reasonable inferences must be drawn in favor of upholding the verdict." Boryszewski ex rel. Boryszewski v. Burke, 380 N.J. Super. 361, 391 (App. Div. 2005). Reviewing courts must give "due regard to the opportunity of the jury to pass upon the credibility of the witnesses." R. 4:49-1(a). And "the trial court's 'feel of the case'" is entitled to

A-1136-23

"due deference."  Risko, 206 N.J. at 522 (quoting Jastram v. Kruse, 197 N.J. 216, 230 (2008)).

A trial court's evidentiary determinations are also entitled to "substantial deference."  State v. Cole, 229 N.J. 430, 449 (2017).  "In reviewing a trial court's evidential ruling, an appellate court is limited to examining the decision for abuse of discretion."  Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008).  "Evidentiary decisions are reviewed under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion."  Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010) (citing Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)).  An abuse of discretion arises "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002).  "[W]e will reverse an evidentiary ruling only if it 'was so wide off the mark that a manifest denial of justice resulted.'"  Griffin v. City of East Orange, 225 N.J. 400, 413 (2016) (quoting Green, 160 N.J. at 492).

Here, Jelken contends the trial judge abused his discretion in excluding photographs of post-accident conduct and the incident report.  We disagree.

I.

We first consider Jelken's argument the judge erred in excluding evidence of defendant's post-accident safety measures. While evidence of safety measures taken after an accident may tend to prove or disprove a fact of consequence, New Jersey has "a clear and longstanding public policy favoring the immunization of remedial measures from negative inferences." In re S.D., 399 N.J. Super. 107, 124 (App. Div. 2008). "'[E]vidence of remedial measures is excluded not because it lacks relevancy,' but because admission of said testimony might discourage corrective action and induce perpetuation of the damage and condition that gave rise to the lawsuit." Harris v. Peridot Chem. (N.J.), Inc., 313 N.J. Super. 257, 292 (App. Div. 1998) (alteration in original) (quoting Hansson v. Catalytic Constr. Co., 43 N.J. Super. 23, 29 (App. Div. 1956)).

Under N.J.R.E. 407, "[e]vidence of remedial measures taken after an event is not admissible to prove that the event was caused by negligence or culpable conduct. However, evidence of such subsequent remedial conduct may be admitted as to other issues." Evidence of subsequent remedial measures may be used for other purposes, such as "to establish control over the instrumentality causing the injury; to show defendant's customary standard of care; to prove the

11

condition exist[ed] at the time of the accident; to show that a feasible alternative for avoiding the danger existed at the time[;] [or] to attack the credibility of a witness." Lavin v. Fauci, 170 N.J. Super. 403, 407 (App. Div. 1979) (citations omitted).

Jelken sought to introduce the photographs to show defendant's employee mopped the floor and placed a caution sign after she fell. Jelken's counsel argued the employee's post-accident conduct was relevant "[t]o show that [Jelken] got out [of defendant's facility] safely"; to show the floor was "slippery"; and to impeach defendant's engineering expert, who testified the floor was highly slip resistant.

We are satisfied the judge did not abuse his discretion in precluding evidence of defendant's post-accident conduct under N.J.R.E. 407. Defendant's employee mopping a puddle and placing a caution sign are "changes and repairs made subsequently to the injury, or . . . precautions taken subsequently, to prevent recurrence of injury" and are "not admissible as showing negligence or as amounting to an admission of negligence." Perry v. Levy, 87 N.J.L. 670, 672 (E. & A. 1915). Absent Jelken's proffer of the photographs to prove some other fact in issue, the evidence of subsequent remedial measures cannot be used to show negligence under N.J.R.E. 407.

We reject the argument that the photographs were required to prove Jelken exited defendant's facility safely. Jelken and Castello testified they left the facility without further incident. Photographs depicting the condition of the floor at the time Jelken fell might be relevant to her negligence claim. However, photographs of the floor after defendant's employee took action constituted evidence of subsequent remedial measures, and the judge properly precluded that evidence under N.J.R.E. 407.

Jelken further argues she intended to use the photographs of defendant's post-accident conduct to prove the floor was slippery. Again, the best evidence in support of this contention was the testimony proffered by Jelken and Castello during the trial.

We also reject Jelken's argument that she intended to use evidence of defendant's subsequent remedial measures to impeach defendant's engineering expert. During his direct testimony, Behnken was never questioned about defendant's post-accident conduct. During cross-examination, Jelken's attorney hypothetically asked if Behnken had been at defendant's premises at the time Jelken fell, whether he would have placed a sign warning people to be careful. Behnken responded he would not have directed the placement of such a sign.

While evidence of subsequent remedial measures may be used to impeach a witness, such evidence is not permissible where "the issue was interjected only by plaintiff's own questioning during cross-examination." Kane v. Hartz Mountain Indus., Inc., 278 N.J. Super. 129, 147 (App. Div. 1994). Here, the issue was interjected by Jelken's attorney's questioning on cross-examination. Thus, the judge properly ruled Jelken's attorney could not "bring forth the [pictures of defendant's post-accident conduct] through his own questioning of [Behnken] on cross-examination." Additionally, evidence impeaching Behnken's testimony that the floor was slip resistant could have been proffered by Jelken's own testimony or the testimony of the engineer who prepared an expert report on Jelken's behalf.

## II.

We next address Jelken's argument that the judge erred in barring Jelken from reading the incident report to the jury. Because the incident report was never authenticated, we reject this argument.

"[A] writing must be properly authenticated before it is admitted into evidence." State v. Marroccelli, 448 N.J. Super. 349, 364 (App. Div. 2017). "However, the burden of establishing a prima facie showing of authenticity 'was not designed to be onerous.'" Ibid. (quoting State v. Hannah, 448 N.J. Super.

78, 89 (App. Div. 2016)). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must present evidence sufficient to support a finding that the item is what its proponent claims." N.J.R.E. 901.

"Authenticity can be established by direct proof—such as testimony by the author admitting authenticity—but direct proof is not required." Hannah, 448 N.J. Super. at 90. "A prima facie showing [of authenticity] may be made circumstantially." Konop v. Rosen, 425 N.J. Super. 391, 411 (App. Div. 2012). "Such circumstantial proof may include demonstrating that the statement 'divulged intimate knowledge of information which one would expect only the person alleged to have been the writer or participant to have.'" Ibid. (quoting Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 3(b) on N.J.R.E. 901 (2011)).

Here, Jelken's attorney claimed the incident report produced by defendant in discovery was the incident report authored by defendant's employee. However, Jelken's counsel failed to demonstrate the report was the same report prepared by defendant's employee as required under N.J.R.E. 901.

The author of the report did not testify at trial. Nor did Jelken present testimony from a person employed by defendant or a records custodian to authenticate the incident report. Because Jelken testified she was "not provided

15

a . . . copy of the incident report," she lacked the required personal knowledge to authenticate the document.

Moreover, there was nothing in the incident report that was not already presented to the jury as part of the trial testimony. The jury heard there was a thunderstorm on the day Jelken visited defendant's premises, Jelken was in the lobby of the facility when she fell in a puddle, and Jelken felt pain after falling. The information in the incident report was simply cumulative and added nothing beyond the testimony presented to the jury.

Since Jelken's counsel failed to authenticate the incident report, the judge did not err in excluding the document. Additionally, we are satisfied the substantive information in the incident report was presented to the jury through the testimony of Jelken, Castello, and Berthoud, as well as cross-examination of Behnken.

Having reviewed the record, we are satisfied the judge's denial of Jelken's new trial motion was not a miscarriage of justice under the law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1136-23