720 A.2d 640 (1998)
316 N.J. Super. 477
Dawn KROHN, Plaintiff-Respondent,
v.
NEW JERSEY FULL INSURANCE UNDERWRITERS ASSOCIATION (State Farm Insurance Company is the Servicing Carrier), Defendant-Appellant,
American Hardware Insurance Company, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 12, 1998.
Decided December 8, 1998.
*641 Stanley H. Needell, Trenton, for defendant-appellant (Needell, Siekerka & Castellani, attorneys; Robert F. Miller, on the brief).
Andrew J. Rossetti, Cherry Hill, for plaintiff-respondent Dawn Krohn (Ferrara & Rossetti, attorneys; Mr. Rossetti, on the brief).
John M. Palm, Cherry Hill, for defendant-respondent American Hardware Insurance Company (Garrigle, Palm & Thomasson, attorneys; Mr. Palm, on the brief).
Before Judges BAIME, CONLEY and KIMMELMAN.
The opinion of the court was delivered by BAIME, P.J.A.D.
Following a lengthy jury trial, plaintiff was awarded $250,000 on her claim for underinsured motorist coverage (UIM) against the New Jersey Automobile Full Insurance Underwriting Association. The Association appeals. We reverse.

I.
Plaintiff was involved in two automobile accidents. One occurred on September 6, 1988, and the other on March 4, 1990. The 1988 accident allegedly resulted in severe migraine headaches and temporomandibular joint problems. The 1990 accident allegedly caused injuries to plaintiff's lower back. At the time of the 1988 accident, the Association was plaintiff's automobile insurer and State Farm Insurance Company was the servicing carrier. The policy carried UIM combined single limits of $250,000. At the time of the 1990 accident, American Hardware Insurance Company provided plaintiff's automobile coverage. That policy had combined single limits of $300,000.
Plaintiff settled both claims for the other drivers' full available policy limits, $50,000. She then demanded arbitration under the UIM clauses of the Association and American Hardware policies. The arbitration proceedings were consolidated. Plaintiff did not seek economic damages. The arbitration panel awarded $150,000 for pain and suffering resulting from the 1988 accident and $40,000 for pain and suffering resulting from the 1990 accident.
Plaintiff rejected the award and filed a complaint in the Law Division, naming State Farm and American Hardware as defendants. State Farm was granted summary judgment and the Association was substituted in its place. In response to interrogatories, plaintiff indicated that she was "not making a lost wage claim." However, shortly before the scheduled trial date, plaintiff supplemented her answers to interrogatories, adding reports pertaining to lost future earnings. At trial, plaintiff was permitted to present expert testimony relating to economic losses over defense counsel's vigorous objections.
Prior to selection of the jury, the Association requested that the names of the tortfeasors in the underlying actions be substituted for the names of the insurance carriers. The trial court rejected this proposal and erroneously referred to State Farm as one of the defendants in its introductory comments to the jury. When reminded that the Association was the correct defendant, the trial court overruled defense counsel's objection. Repeated references were made to State Farm throughout the trial, despite defense counsel's numerous requests for curative instructions.
We need not recount the facts adduced at trial. We merely note that in his opening and closing statements, plaintiff's attorney *642 stridently attacked the insurance company defendants for not honoring their contractual commitment to pay UIM benefits. In the course of his comments, the attorney repeatedly referred to the fact that plaintiff had "paid the extra premium" to obtain full coverage but that the insurers had reneged on their promise. Counsel was not content merely to attack the insurers' motives. In an attempt to gain the jury's sympathy, counsel went on to compare plaintiff's plight to that of a homeowner whose house had been destroyed by fire and whose insurer refused to pay for the resulting loss. The attorney beseeched the jury not to permit the Association to "hide behind the veil" and "persist [with] the indifference [it] had [exhibited] to [plaintiff's] claim." In effect, counsel asked the jury to punish the insurers for their bad faith refusal to honor their commitments. We will return to this subject later in our opinion.
The jury awarded plaintiff $100,000 for pain and suffering, plus $200,000 for future lost wages resulting from the 1988 accident. The jury also awarded plaintiff $10,000 for injuries sustained as a result of the 1990 accident. Following the jury's verdict, the trial court entered judgment in favor of American Hardware because the damage award was less than the settlement amount plaintiff had received from the tortfeasor. As to the Association, judgment was entered in the sum of $250,000. The trial court arrived at this figure by deducting the $50,000 plaintiff had received from the tortfeasor from the amount of damages found by the jury. This appeal followed.

II.
In its appeal, the Association urges us to adopt a blanket rule barring any reference to insurance in a trial on a claim for UIM benefits. Among other artifices, the Association asserts that the name of the tortfeasor in the underlying action should be substituted for that of the defending insurer. We need not issue such a broad ruling in this case. Instead, we find that counsel's repeated references to the subject of insurance seriously infected the Association's right to a fair trial. We reverse the judgment on this limited basis.
Inappropriate efforts of counsel to make the jury aware of irrelevant and prejudicial facts surrounding insurance coverage have long been criticized by our courts. See, e.g., Roman v. Mitchell, 82 N.J. 336, 347-48, 413 A.2d 322 (1980); Brandimarte v. Green, 37 N.J. 557, 562-63, 182 A.2d 562 (1962); Patterson v. Surpless, 107 N.J.L. 305, 307-08, 151 A. 754 (E. & A.1930); Dalton v. Gesser, 72 N.J.Super. 100, 106, 178 A.2d 64 (App.Div.1962); Haid v. Loderstedt, 45 N.J.Super. 547, 550, 133 A.2d 655 (App.Div. 1957); Hansson v. Catalytic Constr. Co., 43 N.J.Super. 23, 30, 127 A.2d 431 (App.Div. 1956); N.J.R.E. 411. As a general rule, the probative value of information regarding whether a person is insured or not is substantially outweighed by the potential for undue prejudice. Biunno, Current N.J. Rules of Evidence, comment to N.J.R.E. 411 (1998-99). One of the principal reasons for this prohibition is that jurors who are made aware that insurance coverage exists may recklessly award damages based upon the perceived "deep pockets" of the carrier. See Judson F. Falknor, Extrinsic Policies Affecting Admissibility, 10 Rutgers L.Rev. 574, 594 (1956).
Perhaps the risk of such prejudice emanating from references to insurance has been diminished with the advent of compulsory automobile liability insurance. In these days, the juror who is neither an automobile owner or operator is a rarity. The average juror may be aware that there is insurance coverage in almost every motor vehicle accident case. The mere mention of such coverage has been held not to be prejudicial error. See Roman v. Mitchell, 82 N.J. at 348, 413 A.2d 322; Bendar v. Rosen, 247 N.J.Super. 219, 236, 588 A.2d 1264 (App.Div.1991); Navarro v. George Koch & Sons, Inc., 211 N.J.Super. 558, 577, 512 A.2d 507 (App.Div.), certif. denied, 107 N.J. 48, 526 A.2d 138 (1986); Runnacles v. Doddrell, 59 N.J.Super. 363, 369, 157 A.2d 836 (App.Div.1960). We have thus said that "`[s]o long as the insurance is not featured or made the basis at the trial for an appeal to increase or decrease the damages, the information would seem to be *643 without prejudice.'" Runnacles v. Doddrell, 59 N.J.Super. at 368, 157 A.2d 836 (quoting Odegard v. Connolly, 211 Minn. 342, 1 N.W.2d 137, 139 (1941)).
We have nevertheless adhered to the rule that statements bearing upon insurance which have no relevance to the issues before the jury should be excluded because of their potential for undue prejudice. In Pickett v. Bevacqua, 273 N.J.Super. 1, 640 A.2d 1173 (App.Div.1994), for example, we reversed a judgment based upon the defense attorney's statements which were designed to induce the jury to consider the plaintiff's election to have lower cost verbal threshold coverage as an element of the right to recover. Id. at 5, 640 A.2d 1173. We said:
Defense counsel's reference to low cost benefits of verbal threshold coverage was totally inappropriate. The statements bore no relevance to the issues before the jury. The clear and prejudicial purpose was to induce the jury into believing that such low cost benefits were an element of plaintiff's right to recovera completely irrelevant and improper purpose and one that could have significantly influenced the jury.
Ibid.
Demers v. Snyder, 282 N.J.Super. 50, 659 A.2d 495 (App.Div.1995) followed in the wake of Pickett. There, as in Pickett, the defense attorney made repeated references to the fact that the plaintiff had selected low cost verbal threshold coverage. In reversing the judgment, we emphasized the view we expressed in Pickett that "there was no purpose or need to even mention the verbal threshold insurance option to the jury." Id. at 58, 659 A.2d 495; cf. Henker v. Preybylowski, 216 N.J.Super. 513, 524 A.2d 455 (App. Div.1987).
These principles apply with equal force here. More specifically, we hold that counsel's repeated references to plaintiff's payment of an "extra premium" and the insurers' abject refusal to honor their contractual commitments were irrelevant, inappropriate and had the capacity to deprive the Association of a fair trial. These comments had no bearing on the material issues, and were designed to prejudice the insurers in the eyes of the jury.
In reaching this conclusion, we nevertheless recognize that in contrast to Pickett and Demers, this case involves a first-party claim against an insurer. The insurers were direct defendants and the suit was for a claimed breach of the insurance contract. See Annunziata v. Prudential Ins. Co., 260 N.J.Super. 210, 615 A.2d 686 (Law Div.1992). We stress, however, that this case was tried as if it were a third-party tort action. That is true of all uninsured and underinsured motorist coverage cases. The insured's legal entitlement to damages for the uninsured or underinsured driver's negligence "imports into the [uninsured or underinsured motorist's] policy all of the normal rules governing tort liability and damages." Montedoro v. City of Asbury Park, 174 N.J.Super. 305, 308-09, 416 A.2d 433 (App.Div.1980). "In effect, an uninsured [or underinsured] motorist provision is a contractual substitute for a tort action against an uninsured [or underinsured] motorist." Midland Ins. Co. v. Colatrella, 102 N.J. 612, 617, 510 A.2d 30 (1986). "Thus, the tortious act of a third party [and resulting damages are] predicate[s] for both recovery of uninsured [and underinsured] motorist proceeds." Ibid. "In both instances, the insured victim's recovery is, to a greater or lesser extent, a substitute for that which would have been derived from a third-party suit but for the inadequacy of the tortfeasor's insurance." Stabile v. New Jersey Mfrs. Ins. Co., 263 N.J.Super. 434, 441, 623 A.2d 252 (App.Div.1993).
So posited, we are convinced that there is generally no need for either a claimant's attorney or an insurer's attorney to refer to the insurance contract, or the amount of the premium paid, or the good faith or bad faith of the insurer in refusing to pay, or the reasons a party rejected an arbitration award. The principal issues in trials involving uninsured or underinsured motorist coverage are the tortfeasor's responsibility for the accident and the injuries sustained. Counsel should limit their remarks to these issues.
Against this backdrop, it is plain that counsel's vitriolic attack upon the insurers for *644 their failure to honor their promise under the insurance contract despite plaintiff's payment of an "extra premium" was totally inappropriate and irrelevant to the issues before the jury. The sole question to be resolved by the jury was damages. Whether or not plaintiff paid an "extra premium" for additional insurance coverage was wholly nongermane to the jury's inquiry. The charge that the insurers stubbornly refused to honor their contractual commitment despite being paid this "extra premium" was equally irrelevant and abhorrent. Reference to State Farm, a nationally known insurer, as the defendant added to the potential for undue prejudice. Unfortunately, the trial court failed to intervene and did not give a curative instruction. We are satisfied that the attorney's comments had the clear capacity to produce an unjust result. R. 2:10-2. We thus reverse the judgment insofar as it relates to the Association.

III.
In light of our disposition of the principal issue and the need for a new trial, we have no occasion to address most of the Association's remaining arguments. Because of the possibility that these issues will recur, we add the following brief comments concerning several of the Association's contentions.
The Association argues that plaintiff should be barred from asserting a claim for future lost earnings because she did not seek these damages in the UIM arbitration proceedings. We reject this contention. We read the arbitration clause as permitting a party to reject the arbitration decision and obtain a trial de novo on all issues, even those that were not advanced in the arbitration proceedings.
The Association contends that the settlement amount should have been credited against plaintiff's UIM policy limit, rather than being deducted from the jury's damage award. We agree. N.J.S.A. 17:28-1.1e states specifically that "[t]he limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily injury liability insurance or bonds." Ibid. The statutory language is crystal clear and we have no right to deviate from the legislative mandate. Although no reported opinion has addressed this precise issue, decisional law supports our construction of the statute. See, e.g., Calabrese v. Selective Ins. Co. of Am., 297 N.J.Super. 423, 434, 688 A.2d 606 (App.Div.1997) (explaining that settlement amount is deducted from UIM coverage), overruled on other grounds by Magnifico v. Rutgers Cos. Ins. Co., 153 N.J. 406, 710 A.2d 412 (1998); Nikiper v. Motor Club of Am. Cos., 232 N.J.Super. 393, 398, 557 A.2d 332 (App.Div.) ("pro tanto credit against ... UIM coverage"), certif. denied, 117 N.J. 139, 564 A.2d 863 (1989); Longworth v. Van Houten, 223 N.J.Super. 174, 178, 538 A.2d 414 (App.Div.1988) (recovery against tortfeasor is "offset against the maximum UIM coverage provided for by the policy").
The Association argues that the trial court erred by permitting plaintiff's expert witnesses to recite the findings of experts who did not testify. In other contexts, we have said that our evidentiary rules permit an expert witness to rely on the opinions of other experts. See, e.g., State v. Smith, 262 N.J.Super. 487, 521, 621 A.2d 493 (App.Div.), certif. denied, 134 N.J. 476, 634 A.2d 523 (1993); see also Biunno, Current N.J. Rules of Evidence, comment 5 to N.J.R.E. 703; Lewis Tyree, The Opinion Rule, 10 Rutgers L.Rev. 601, 610-12 (1956). We concluded that "[w]hether these sources ... [are] persuasive [go] to the weight of the opinion, not to its admissibility." State v. Smith, 262 N.J.Super. at 521, 621 A.2d 493. We add that this rule must be anchored to the reason for its existenceto apprise the factfinder of the bases for the expert's conclusion. An expert witness should not be allowed to relate the opinions of a nontestifying expert merely because those opinions are congruent with the ones he has reached. The trial court should exercise its discretion pursuant to N.J.R.E. 403 to insure that the essential policy underlying the evidentiary principle is faithfully implemented.
The judgment against the Association is reversed, and the matter is remanded for a new trial.