**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2181-23

BRENDA ZADJEIKA,

     Plaintiff-Appellant/
     Cross-Respondent,

v.

NJ AMERICAN WATER,

     Defendant-Respondent/
     Cross-Appellant,

and

BOROUGH OF HADDONFIELD,
and HADDONFIELD SHADE
TREE COMMISSIONS,

     Defendants-Respondents.

_____

        Argued November 13, 2025 – Decided June 1, 2026

        Before Judges Smith and Jablonski.

        On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1057-21.

Michael Confusione argued the cause for appellant/cross-respondent (Hegge & Confusione, LLC, attorneys; Michael Confusione, of counsel and on the briefs).

Walter F. Kawalec, III, argued the cause for respondent/cross-appellant NJ American Water (Marshall Dennehey, PC, attorneys; Paul C. Johnson and Walter F. Kawalec, III, on the briefs).

Robert J. Gillispie, Jr., argued the cause for respondents Borough of Haddonfield and Haddonfield Shade Tree Commission (Donnelly, Petrycki & Sansone PC, attorneys; Robert J. Gillispie, Jr., of counsel and on the brief).

PER CURIAM

Plaintiff Brenda Zadjeika sued NJ American Water (NJAW), as well as the Borough of Haddonfield (Haddonfield) and the Haddonfield Shade Tree Commission (HSTC) (the Haddonfield defendants), after a tree fell from NJAW's property onto plaintiff's home. Prior to trial, a motion judge dismissed the claims against the Haddonfield defendants on their motions for summary judgment. The remaining parties proceeded to trial. After trial before a different judge, the jury awarded plaintiff $48,000 in dwelling property damages, $0 in personal property damages, $50,000 in loss of use damages, and $75,000 related to loss of quality of life and pain and suffering.

On appeal, plaintiff contends that the motion judge committed error by dismissing her claims against the Haddonfield defendants. In addition, plaintiff asserts the trial judge committed various errors before, during, and after trial which deprived her of a fair trial. Finally, plaintiff argues that the trial judge erred by denying her motions for a new trial on damages or for additur. We affirm for the reasons which follow.

I.

In 2015, NJAW bought property located on Lake Street from the Borough of Haddonfield. On the property was a black oak tree. Five years later, during May 2020, plaintiff contacted Haddonfield's public works superintendent regarding her concerns with the tree. The superintendent informed her that Haddonfield was not responsible for trees on private property. Approximately a month later, the black oak fell during a derecho[1] storm, striking a pin oak tree located on the curb next to plaintiff's property. Both trees collapsed onto plaintiff's home. Because of the storm-related damage to the home, plaintiff and her daughter were forced to relocate.

---

[1] A derecho is defined as a large fast-moving complex of thunderstorms with powerful straight-line winds that cause widespread destruction. Merriam-Webster's Collegiate Dictionary, 445 (12th ed. 2026).

A-2181-23

In April 2021, plaintiff sued NJAW for negligence and negligence per se. She also sued the Haddonfield defendants under the Tort Claims Act (TCA), seeking damages.[2] All defendants answered and moved for summary judgment after discovery.

The motion judge granted summary judgment to the Haddonfield defendants in February 2023, finding that Haddonfield: was not liable for failing to enforce local ordinances against NJAW under N.J.S.A. 59:2-4; was immune from negligent inspection claims because the black oak was not on property owned or controlled by the borough under N.J.S.A. 59:2-6; and was not liable for the alleged dangerous condition of the black oak under N.J.S.A. 59:4-2. The motion judge next determined that HSTC was immune under N.J.S.A. 59:4-10. Finally, the judge addressed the damages aspect of plaintiff's TCA claim, dismissing her claims for pain and suffering damages against the Haddonfield defendants because she failed to prove a permanent loss of bodily function under N.J.S.A. 59:9-2(d).

Before trial, plaintiff moved to strike NJAW's comparative negligence defense and preclude certain testimony from defendant's expert, Mark Webber, on maintenance work done on the black oak tree by Public Service Enterprise

---

[2] N.J.S.A. 59:1-1 to 12-3.

Group (PSE&G), which was not a party to the case. Defendant moved to preclude: plaintiff's wage loss and personal property claims; reference to any allegations of permanent injury by plaintiff; and testimony from various plaintiff's witnesses. The trial court granted plaintiff's motion to strike the comparative negligence defense but denied the motion to preclude Webber's testimony. The court found that Webber's testimony was relevant because PSE&G "had some management or maintenance control over the tree." The court denied some of defendant's pre-trial motions in limine, including its motions to bar: statements from a child witness; plaintiff's claim for personal property loss; and testimony of plaintiff witnesses Jeanette Glennon and Courtney Pederzani. The court then granted some other NJAW motions to bar, including: plaintiff's claim for wage loss; reference to plaintiff's permanent injury claims; and testimony from certain medical providers based on the parties' pre-trial stipulations. Defendant withdrew its motion to preclude certain plaintiff's witness testimony.

The jury trial took six days in 2024. Plaintiff testified. Her other witnesses included: Joseph Stavola, who testified to plaintiff's estimated construction costs for repair of her damaged home; Courtney Pederzani, a neighbor; Madison Zadjeika, plaintiff's daughter; Pat Santorsola, the insurance

adjuster who handled plaintiff's insurance claim; Jason Miller, plaintiff's tree expert; and Donna Slack, a NJAW representative familiar with NJAW's property. Defendant's witnesses included: William Ober, a tree crew foreman for Haddonfield; Gary Szatkowski, a consulting meteorologist; and Webber, defendant's tree expert.

During trial, the court found plaintiff failed to present evidence of defendant's violation of a state statute or municipal ordinance and consequently declined to give a negligence per se charge to the jury. The court also rejected plaintiff's proposed dangerous instrumentalities or conditions charge, declining to impose an increased standard of care beyond negligence.

As stated, the jury awarded plaintiff $173,000 in damages, including: $48,000 in dwelling property damages; $50,000 in loss of use damages; and $75,000 in quality of life and pain and suffering damages. The jury did not award plaintiff any sum for personal property damages.

After the verdict, plaintiff moved for additur or, alternatively, a new trial on personal property damages. The trial court denied the motion, finding:

> [Plaintiff's counsel] indicates that there could only be one reason why the jury did not provide a -- an award for personal property and that was because of the introduction of her prior insurance policy. However, there are . . . any number of reasons why they didn't do it: Perhaps, they didn't believe her testimony; perhaps,

6

they felt that there needed to be more information submitted with regard to what the market value was; or, perhaps, they relied upon the itemization of information . . . [of] items that she obtained after the fact as being not replacement values.

There's . . . no way for this [c]ourt to know why they made the decision that they made. What this [c]ourt has to determine is whether that decision was a manifest denial of justice. And the [c]ourt does not find that there has been a clear and convincing argument that there is a manifest denial of justice in this jury award.

After denying the motions, the trial court issued an amended order of judgment awarding plaintiff $186,298.73.

Plaintiff appeals, arguing that she is entitled to a new trial on various grounds. She contends that the trial court erred by: granting summary judgment to the Haddonfield defendants; making evidentiary rulings which deprived plaintiff of a fair trial; erroneously permitting defense counsel to tell the jury in summation that plaintiff had received money from her insurance company; and finally, by not granting plaintiff's motion for additur or a new trial on damages. Defendant cross-appeals, arguing that the trial court erred by denying its motion to bar certain witness testimony.

A-2181-23

II.

We summarize the relevant review standards and the corresponding legal principles.

We review the trial court's grant or denial of summary judgment de novo, applying the same standard used by the trial court. Christakos v. Boyadjis, 262 N.J. 447, 467 (2026). We "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party[,]" and "accept as true all the evidence which supports the position of the party defending against the motion and must accord [that party] the benefit of all legitimate inferences which can be deduced therefrom[.]" Alloco v. Ocean Beach & Bay Club, 456 N.J. Super. 124, 134 (App. Div. 2018) (second and third alterations in original) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535, 540 (1995)).

We grant summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and [where] the moving party is entitled to a judgment or order as a matter of law." Green v. Monmouth Univ., 237 N.J. 516, 529 (2019) (quoting R. 4:46-2(c)).

We review a trial court's evidentiary rulings for abuse of discretion. State v. Burney, 255 N.J. 1, 20 (2023) (citing State v. Garcia, 245 N.J. 412, 430 (2021)). "[T]he decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." State v. Prall, 231 N.J. 567, 580 (2018) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)). An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260 (7th Cir. 1985)).

When parties fail to object to the admissibility of evidence at trial, we review admissibility arguments raised on appeal for plain error. See R. 2:10-2; Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 128 (2008) (citing Fertile v. St. Michael's Med. Ctr., 169 N.J. 481, 493 (2001)). "The mere possibility of error is insufficient for reversal. We must determine whether, in the interests of justice, the cited error had the 'clear capacity for producing an unjust result.'" N.J. Div. of Youth & Family Servs. v. N.S., 412 N.J. Super. 593, 622 (App. Div. 2010) (quoting Tartaglia, 197 N.J. at 128) (internal quotation marks omitted). We "may reverse a trial court's judgment if the cumulative effect of a series of

errors is so great as to deprive a defendant of a fair trial."  Burney, 255 N.J. at

29 (citing Pellicer v. Saint Barnabas Hosp., 200 N.J. 22, 53 (2009)).

Concerning jury instructions,

> [w]e review for plain error the trial court's obligation to
> sua sponte deliver a jury instruction when a defendant
> does not request it and fails to object at trial to its
> omission.  State v. Cole, 229 N.J. 430, 455 (2017); State
> v. Funderburg, 225 N.J. 66, 79 (2016).  To warrant
> reversal, the unchallenged error must have been
> "clearly capable of producing an unjust result."  R.
> 2:10-2.  "The mere possibility of an unjust result is not
> enough."  Funderburg, 225 N.J. at 79.  Rather, "[t]he
> possibility must be real, one sufficient to raise a
> reasonable doubt as to whether the error led the jury to
> a result it otherwise might not have reached."  State v.
> Macon, 57 N.J. 325, 336 (1971).
>
> [State v. Alexander, 233 N.J. 132, 141-42 (2018)
> (citations reformatted).]

"We review de novo an order granting a motion for judgment under Rule

4:40-1."  Estate of Barbuto v. Boyd & Boyd, 462 N.J. Super. 580, 587 (App.

Div. 2020) (citing Lechler v. 303 Sunset Ave. Condo. Ass'n, 452 N.J. Super.

574, 582 (App. Div. 2017)).  "We review the trial court's grant of . . . defendant's

motion for judgment at trial pursuant to Rule 4:40-1 under the standard that

governs a trial court determining [that] motion[]."  Holm v. Purdy, 252 N.J. 384,

400 (2022) (citing Smith v. Millville Rescue Squad, 225 N.J. 373, 397 (2016)).

A motion for judgment at the close of all evidence under Rule 4:40-1 is judged

"by the same evidential standard," which is "[i]f, accepting as true all the evidence which supports the position of the party defending against the motion and according [them] the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied." Verdicchio v. Ricca, 179 N.J. 1, 30 (2004) (quoting Est. of Roach v. TRW, Inc., 164 N.J. 598, 612 (2000)).

The motion for judgment "standard[s] ensure[] that appellate tribunals will not overstep their bounds by usurping the jury's task of assessing the credibility of the witnesses." Sons of Thunder v. Borden, Inc., 148 N.J. 396, 415 (1997). "The point is that the judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Ibid. (quoting Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969)). Such motions "should only 'be granted where no rational juror could conclude that the plaintiff marshaled sufficient evidence to satisfy each prima facie element of a cause of action.'" Smith, 225 N.J. at 397 (quoting Godfrey v. Princeton Theological Seminary, 196 N.J. 178, 197 (2008)). Stated differently, "the jury's factual determination will be disturbed only if we find

that the jury could not have reasonably used the evidence to reach its verdict." Sons of Thunder, 148 N.J. at 415.

"[A] trial judge shall grant the motion [for a new trial] if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." R. 4:49-1(a).

> A "miscarriage of justice" has been described as a "'pervading sense of "wrongness" needed to justify [an] appellate or trial judge undoing of a jury verdict . . . [which] can arise . . . from manifest lack of inherently credible evidence to support the finding, obvious overlooking or under-valuation of crucial evidence, [or] a clearly unjust result . . . .'"
>
> [Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 521-22 (2011) (alterations and omissions in original) (quoting Lindenmuth v. Holden, 296 N.J. Super. 42, 48 (App. Div. 1996)).]

"A jury verdict is entitled to considerable deference and 'should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice.'" Id. at 521 (quoting Baxter v. Fairmont Food, Co., 74 N.J. 588, 597-98 (1977)).

"[A] trial court may not disturb a damages award entered by a jury unless it is so grossly excessive or so grossly inadequate 'that it shocks the judicial conscience.'" Orientale v. Jennings, 239 N.J. 569, 595 (2019) (quoting Cuevas v. Wentworth Grp., 226 N.J. 480, 485 (2016)). Our Supreme Court has held that:

> [I]n the unusual case where a damages award was grossly excessive or grossly inadequate, the trial court retains the power to declare that a jury's damages award shocks the conscience and to grant a new trial or offer the parties a remittitur or an additur . . . [U]nless both parties consent to a remittitur or an additur, the court must grant a new trial.
>
> [Id. at 593.]

III.

We consider a threshold issue: what is the permissible scope of plaintiff's appeal, when she has already secured judgment against NJAW and further, has accepted payment on that judgment?

NJAW argues that plaintiff's acceptance of the $187,494.73 as payment of the jury's verdict, including costs and pre- and post-judgment interest, precludes her from appealing trial court orders in a way that would invalidate or reduce the amount of the judgment. NJAW argues that the only appealable order

13

is the trial court's denial of plaintiff's motion for a new trial on damages solely for personal property.

While not included in the record submitted by the parties, we take judicial notice that an Order to Satisfy Judgment was entered on December 30, 2024.[3] The order states:

> On examination of the proceedings in the case and the evidence presented by counsel for the party making satisfaction, the court finds that [p]laintiff has received satisfaction of the March 6, 2024 judgment and has failed to have satisfaction entered of record or a warrant of satisfaction.
>
> Therefore[,] it is ORDERED that the clerk of court is directed to make an appropriate entry on the docket of the satisfaction of the March 6, 2024 judgment.

Given that plaintiff has accepted payment in satisfaction of an order of judgment against NJAW, we consider the relevant jurisprudence, and its effect on this record.

The fundamental common law rule is that "a litigant who voluntarily accepts the benefits of a judgment is estopped from attacking it on appeal."

---

[3] N.J.R.E. 201(b)(4), (c) allows the court to take judicial notice of record of the court in which the action is still pending and grants the court discretion to take judicial notice on its own.

Tassie v. Tassie, 140 N.J. Super. 517, 524 (App. Div. 1976).  We also noted in

Tassie that

> [t]he rule that a litigant cannot seek appellate review of a judgment under which he has accepted a benefit is but a corollary to the established principle that any act upon the part of a litigant by which he expressly or impliedly recognizes the validity of a judgment operates as a waiver or surrender of his right to appeal therefrom.
>
> [Id. at 525.]

In Simon v. Simon, 148 N.J. Super. 40, 42 (App. Div. 1977), this court

found that this principle

> governs only where the appeal constitutes a repudiation of the judgment under which the benefits were received or is materially inconsistent therewith.  Generally, appellate review is barred where it may lead to a result showing that appellant is not entitled to what was received under the judgment appealed from.

In Adolph Gottscho, Inc. v. Am. Marking Corp., 26 N.J. 229, 242 (1958),

the Court endorsed the right of a "party to accept a sum to which he is in any

event entitled and still pursue his request for a legal ruling on appeal which

would increase that sum."

Applying the law to this record, we conclude that some of plaintiff's claims on appeal are precluded, while others remain viable. Specifically, issues which could invalidate the jury's finding that NJAW was negligent or which reduce the damage awards for loss of plaintiff's dwelling, its use, and mental health are precluded. They include: (1) introduction of plaintiff's insurance coverage and proceeds relating to dwelling damages; (2) Webber's testimony on PSE&G's management of the black oak tree on the question of liability; (3) cross-examination of plaintiff and her daughter related to plaintiff's mental health history; and (4) the trial court's decision not to give the jury a limiting instruction on the relevancy of the mental health testimony.

On the other hand, the issues properly considered are those which: (1) affect personal property damages; (2) increase the damages award separately from the damages considered by the jury; (3) add potential theories of NJAW's liability for the jury to determine; and (4) reinstate the Haddonfield defendants as to liability.

We unpack the permissible appellate issues in detail here. The claims which affect only personal property damages include: additur or a new trial on personal property damages or a new trial based on the introduction of insurance coverage and proceeds related to personal property. Plaintiff's claim that the

16

jury should have been able to find damages for wage loss and permanent injury are also appealable, as they could only increase the damage award. A new trial to determine NJAW's liability under the doctrines of negligence per se and dangerous instrumentalities or conditions would not overturn the award as this would leave the jury's finding of liability based on negligence undisturbed. Finally, dismissal of the Haddonfield defendants on summary judgment is appealable if, on a finding that the Haddonfield defendants were wrongly dismissed, this court limited the jury to apportionment of fault between NJAW and the Haddonfield defendants.

We address the allegations of trial error first, then the motions for additur and new trial, and then the dismissal of the Haddonfield defendants under the TCA.

## A.

On appeal, plaintiff argues that the trial court's failure to exclude testimony related to plaintiff's insurance coverage and proceeds she received was reversible error. Plaintiff further contends that the jury was improperly influenced by evidence of plaintiff's prior insurance coverage, and as a result, found plaintiff at fault for not increasing her personal property insurance

17

coverage to an amount in excess of $200,000 when she moved back into her home. She seeks a new trial on damages.

Because plaintiff opened the door by testifying about her insurance coverage and her receipt of insurance proceeds during the trial, we are unpersuaded. As plaintiff did not object to defendant's cross-examination of plaintiff on these issues during trial, we apply a plain error standard of review. Tartaglia, 197 N.J. at 128.

It is well-settled that "statements bearing upon insurance which have no relevance to the issues before the jury should be excluded because of their potential for undue prejudice." Krohn v. N.J. Full Ins. Underwriters Ass'n, 316 N.J. Super. 477, 482 (App. Div. 1998). However, "[s]o long as the insurance is not featured or made the basis at the trial for an appeal to increase or decrease the damages, the information would seem to be without prejudice." Runnacles v. Doddrell, 59 N.J. Super. 363, 368 (App. Div. 1960) (quoting Odegard v. Connolly, 1 N.W.2d 137, 139 (Minn. 1941)) (internal quotation marks omitted); see also Krohn, 316 N.J. Super. at 482.

In evaluating the admissibility of evidence, we also rely on the "opening the door" doctrine, which is a "'a rule of expanded relevancy and authorizes admitting evidence which otherwise would have been irrelevant or inadmissible

A-2181-23

in order to respond to (1) admissible evidence that generates an issue, or (2) inadmissible evidence admitted by the court over objection.'" State v. Prall, 231 N.J. 567, 582 (2018) (quoting State v. James, 144 N.J. 538, 554 (1996)). "In other words, it permits 'a party to elicit otherwise inadmissible evidence when the opposing party has made unfair prejudicial use of related evidence.'" Id. at 582-83 (quoting James, 144 N.J. at 554). "The doctrine is limited, however, by weighing the probative value against the prejudicial nature of the evidence under N.J.R.E. 403." Id. at 583 (citing James, 144 N.J. at 554).

Plaintiff testified that she received insurance proceeds for dwelling property damages and loss of use damages. Santorsola, plaintiff's insurance adjuster, testified that $5,000 was issued to plaintiff for personal property damages. During closing, plaintiff used these proceeds as a basis to calculate damages for the jury: $88,000 in dwelling property damages; $50,000 in loss of use damages; and $75,000 in personal property damages.

Having introduced insurance evidence at trial herself, plaintiff cannot now argue that evidence central to her case-in-chief was prejudicial. There was no plain error to permit the testimony on this issue.

B.

Plaintiff next contends the trial court erred by permitting defendant to introduce evidence of her reduced insurance coverage to argue that plaintiff's failure to increase her personal property insurance coverage barred her claim for personal property damages in the negligence suit. We disagree, and find this claim without merit.

Because plaintiff's counsel objected to defendant's cross-examination of her on the subject of her prior insurance coverage, our standard of review is abuse of discretion. Burney, 255 N.J. at 20; Prall, 231 N.J. at 580.

The court denied defendant's pre-trial motion to preclude plaintiff's claim for personal property damages on these grounds, finding that using such evidence to preclude a claim for damages would be improper. However, at trial, plaintiff introduced the topic of her personal property insurance coverage. She testified that, prior to the storm, she reduced her coverage limits for personal property. She did so when she moved out of the home and began renting it to tenants. Over plaintiff's counsel's objection, the court permitted defendant to cross-examine plaintiff on this issue.

A-2181-23

In its summation, defendant did not rely on plaintiff's failure to change insurance coverage to argue against the jury's award of personal property damages. Counsel stated:

> So then to get into personal property, the claim for personal property. You heard Mr. Santorsola tell you that he knew right away she had $5,000 in coverage for personal property, and he knew right away the house was destroyed. $5,000 is done, no question. There's more than $5,000 in damage.
>
> So he told you that for some reason the insurance company asked [plaintiff] to create a handwritten inventory of her -- her damages, even though they weren't going to look at it. He told you that. That he didn't look at it. He said no one reviewed it, no one inspected it, no one audited it.
>
> And so when the [j]udge is going to instruct you on the law and -- and he will instruct you. That's -- that's who you listen to. But he's going to tell you that personal property is valued, determined by market value of the product.
>
> What is market value? Did plaintiff provide you with any evidence of the market value to assist you in reaching a decision? No. Plaintiff prepared the inventory herself and she assigned the values to the items on that inventory. Now, she did tell you that she looked up items on the Internet to get the value, but she didn't print them out. She didn't supply them to the insurance company. She didn't supply them to us here. You're not going to see them. You're not going to see any of the -- the support that [plaintiff] had for those items and for those values that she assigned to her inventory. So you really have no evidence to consider

to substantiate a market value for any of her alleged personal property losses.

Given that plaintiff opened the door to the change in insurance coverage evidence and that there is no evidence that defendant used that evidence to argue for the decrease in plaintiff's personal property damages, Krohn, 316 N.J. Super. at 482, we conclude that the trial court did not abuse its discretion in permitting defendant's questioning on the issue.

C.

Plaintiff next argues that the trial court abused its discretion when it permitted Webber, defendant's tree expert, to testify regarding PSE&G's management of the black oak tree. Plaintiff contends permitting Webber to testify exposed the jury to potential confusion about whose duty it was to maintain the tree, thereby prejudicing plaintiff. We are unconvinced.

Webber's testimony, in response to questions regarding maintenance and management of the black oak, was simple. We recite the relevant colloquy from the direct examination here:

> [WEBBER]: Yeah. The bottom line is your communication lines. And then the upper lines above . . . those are what's called primary lines. And the lines below . . . are secondary lines. And so . . . electrical distribution [must] be pruned for clearance because you can't move electricity from Point A to Point B if . . . a tree is touching it. So, for years, this tree was pruned

by the utility. Really, half the tree was being <u>managed</u> by the power company.

[DEFENSE COUNSEL]: So, in 2010, when this photograph was taken and Haddonfield owned that tree, would Haddonfield had been able to prune that tree around those electrical wires?

[WEBBER]: No.

. . . .

[DEFENSE COUNSEL]: What's your next conclusion, sir?

[WEBBER]: The evidence, in this case, shows that the party that <u>managed</u> the subject tree and was pruning it was the Electrical Supply Utility of New Jersey, PSE&G. Evidence, in this case, indicates that PSE&G removed leaves, branches, and limbs away from the conductors of PSE&G.

[DEFENSE COUNSEL]: And then the next conclusion follows that; doesn't it, sir?

[WEBBER]: Yes.

[DEFENSE COUNSEL]: And what does that say?

[WEBBER]: The property owner [NJAW] was not allowed to remove or prune the subject tree since it was so close and associated with the poles and conductors of PSE&G.

The record shows that Webber simply discussed PSE&G's responsibility for maintaining its electrical wire right of way, what entities could not trim or

A-2181-23

prune around the electrical wires, and PSE&G's coordination with defendant about maintenance of the tree. Plaintiff did not object to any of this testimony. Indeed, plaintiff cross-examined Webber regarding his testimony.

This court is mindful that "[t]he absence of an objection suggests that trial counsel perceived no error or prejudice" and that their failure to object "prevented the trial judge from remedying any possible confusion in a timely fashion." Bradford v. Kupper Assocs., 283 N.J. Super. 556, 573-74 (App. Div. 1995). "[R]elief under the plain error rule, at least in civil cases, is discretionary and should be sparingly employed." Bldg. Materials Corp. of Am. v. Allstate Ins. Co., 424 N.J. Super. 448, 487 n.14 (App. Div. 2012) (alteration in original) (quoting Gaido v. Weiser, 115 N.J. 310, 311 (1989)).

We conclude that the trial court committed no plain error by permitting Webber 's testimony.

### D.

Plaintiff next raises arguments related to her claim for damages stemming from her mental and emotional injury she allegedly suffered because of the trees collapsing on her home.

24

i.

She first contends that the trial court committed plain error when it permitted plaintiff and her daughter to be cross-examined about topics she contends were not relevant, and may have prejudiced her with the jury. The topics included, but were not limited to, incidents related to plaintiff's work and home life. We find these claims without merit, as plaintiff's complaint sought damages for pain and suffering and "mental anguish" flowing from defendants' acts.

Trial courts are afforded broad discretion in controlling cross-examination. State v. Jenewicz, 193 N.J. 440, 467 (2008). When there is no objection to counsel's cross-examination, this court applies the plain error rule and reverses only if the course followed by defense counsel was "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2; Fitzgerald v. Stanley Roberts, Inc., 186 N.J. 286, 318 (2006) (citing R. 1:7-5).

A jury may compensate a plaintiff for "pain, suffering, disability, impairment, and loss of enjoyment of life proximately caused by defendant's negligence (or other fault)." Model Jury Charges (Civil), 8.11E, "Disability, Impairment and Loss of the Enjoyment of Life, Pain and Suffering" (rev. May

2017) (emphasis added). As such, the evidence introduced on cross-examination was relevant in determining whether plaintiff's mental anguish was caused by the June 3, 2020 incident, or unrelated events. Plaintiff fails to show how the events were prejudicial. She further fails to show how this evidence was "clearly capable of producing an unjust result." R. 2:10-2.

ii.

Plaintiff also argues that the trial court committed plain error by not issuing a limiting instruction sua sponte which would limit the relevancy of plaintiff's mental health history during their deliberations. We find this argument without merit. We comment briefly.

Our jurisprudence holds that, to find plain error in a trial court's failure to issue a jury instruction sua sponte, "[t]he possibility [of an unjust result] must be real, one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." Alexander, 233 N.J. at 142 (first alteration in original) (quoting Macon, 57 N.J. at 336). Pain and suffering damage awards are to be left in the "sound discretion" of the jury, Model Jury Charges (Civil), 8.11E, at 2-3. Given that the jury awarded plaintiff $75,000 in pain and suffering damages, we conclude there is no basis for plaintiff to argue

26

that the failure to issue a limiting instruction jury charge led to an unjust result. The record confirms that no plain error occurred.

E.

Plaintiff contends that the trial court erred when it granted defendant's motion during the charge conference to preclude jury instructions on negligence per se and dangerous instrumentalities or conditions theories. We consider each argument in turn.

i.

Plaintiff argues that "New Jersey law allows a judge to charge negligence per se claim [sic] based on the existence of a town ordinance."[4] Plaintiff then avers that "[t]here was a reasonable basis in the evidence for the jury to make a 'highly destructive agency' finding, therefore; the court erred in denying this charge." We disagree.

Plaintiff argues that defendant violated Haddonfield, N.J., Code § 173-11, specifically subsections H and J. The ordinance and relevant subsections read as follows:

---

[4] In her merits brief, plaintiff does not cite to any local ordinance that NJAW may have violated, nor does she cite to any case law for this proposition. Based on plaintiff's appendix, plaintiff argued in her initial complaint that defendant had violated Haddonfield, N.J., Code § 173-11, "Standard for maintenance".

The following standards for maintenance of a premises shall be the minimum conditions for maintenance of each and every premises within the Borough of Haddonfield. It shall be a violation of this Property Maintenance Ordinance for any owner, operator or occupant to allow or permit any premises owned, operated or occupied by such person or entity to fail to comply with each of the following standards. It shall further be a violation of this Property Maintenance Ordinance for any owner or occupant to occupy or, as an owner or operator, to permit or allow another to occupy or use premises which do not comply with each of the following standards:

. . . .

H. All areas shall be kept free from weeds or plant growth which is noxious, dangerous or detrimental to the public health and safety.

. . . .

J. The exterior of all premises shall be kept free of the following materials and conditions:

. . . .

(6) Dangerously loose and overhanging objects on private property, including but not limited to dead trees or tree limbs; accumulations of ice or any object, natural or man-made, which could threaten the health and safety of persons if caused to fall; or other similar dangerously loose or overhanging object which, by reason of its location above ground level, constitutes an actual hazard to persons or vehicles in the vicinity thereof.

28

In New Jersey,

> [n]egligence per se . . . is limited to the exceptional situation in which the Legislature has incorporated a common law standard of care into a statute. In the usual case, violation of a statute is only evidence of negligence, and only if the statutory violation was "causally related to the happening of the accident."
>
> [Labega v. Joshi, 470 N.J. Super. 472, 491-92 (App. Div. 2022) (quoting Mattero v. Silverman, 71 N.J. Super. 1, 9 (App. Div. 1961)).]

Plaintiff fails to support her claim that defendant's breach of the ordinance could constitute negligence per se. The jury charge that plaintiff sought specifically states that "the plaintiff, in support of the claim of negligence made, asserts that defendant violated a provision of the New Jersey Administrative Code/New Jersey Statutes [whichever is applicable]." Model Jury Charge (Civil), 5.10I(1), "Evidence of and Per Se Negligence" (approved Apr. 2016). The subject ordinance is neither a statute nor a regulation. Under this charge, plaintiff's claim would have failed as she argues that defendant violated a municipal code. We conclude that the trial court's rejection of plaintiff's proposed jury instruction was not error.

ii.

Plaintiff argues that the trial court erred when it did not instruct the jury on "highly destructive agency." We are unpersuaded, as plaintiff failed to plead

29

this theory against NJAW. Here, plaintiff brought a claim for dangerous conditions against the Haddonfield defendants pursuant to the TCA, but no claim for "dangerous instrumentalities or conditions" against NJAW. The trial court committed no error when it denied, at the charge conference, inclusion of the Model Jury Charges (Civil), 5.20H, "Dangerous Instrumentalities or Conditions" (approved before 1983)[5] in the instructions slated to go before the jury.

F.

Plaintiff argues that the trial court erred when it denied plaintiff's motion for additur or a new trial. She contends that "[t]he verdict returned by the jury [on personal property] was so against the evidence that it constituted a clear miscarriage of justice" and that "the jury's award . . . shocks the judicial conscience and additur should have been granted . . . ." Plaintiff focuses on the jury's award of zero dollars for personal property damages, insisting that the court's failure to exclude evidence of plaintiff's insurance coverage led to the jury's decision not to award personal property damages.

We consider the relevant law.

---

[5] "Whoever uses a highly destructive agency is held to a correspondingly high degree of care toward all persons who in the exercise of their lawful right may come in contact with it." Model Jury Charges (Civil), 5.20H(A).

30

In addressing damages, "where harm is done to personal property, the Restatement (First) of Torts, § 928 (A.L.I. 1939) provides that the plaintiff be given an option to recover either the diminution in value or the reasonable cost of repairs."  Berg v. Reaction Div., Thiokol Chem. Corp., 37 N.J. 396, 411-12 (1962) (citation reformatted).

Model Jury Charges (Civil), 8.44(A), "Personal Property" (approved Mar. 1975), similarly provides:

> If you ultimately find the plaintiff's personal property was damaged as a result of the defendant's negligence, plaintiff would be entitled to your verdict.  Plaintiff would be entitled to money damages from the defendant for the loss suffered.
>
> The measure of damages for such loss is the difference between the market value of the personal property before and the market value after the damage occurred.  If the personal property has no market value in its damaged condition, the measure of damages is the difference between the market value of the personal property before the damage occurred and its salvage value in its damaged condition.  If the personal property is not substantially damaged and it can be repaired at a cost less than the difference between its market value before and its market value after the damage occurred the plaintiff's damage would be limited to the cost of the repairs.

Regarding proofs relating to value, our jury charges provide:

> In determining the amount of money, if any, to be awarded the plaintiff (owner) for the damage to his/her

31

personal property, you may consider, but are not bound by, the testimony of the plaintiff (owner) as to his/her opinion of the value of the property before and after it was damaged.

[Model Jury Charges (Civil), 8.44(B), "Personal Property" (approved Mar. 1975).]

The charge specifically advises the judge that

[t]he owner of personal property may be permitted to testify as to its value before and after damage where such personal property is "of a common class or in general daily use," in the court's discretion, but not where the owner has not the slightest knowledge of such value . . . . Rodgers v. Reid Oldsmobile, Inc., 58 N.J. Super. 375, 385 (App. Div. 1959) and Nixon v. Lawhon, 32 N.J. Super. 351, 356 (App. Div. 1954).

[Ibid. (citations reformatted).]

Our Supreme Court has stated that "[a] trial court may not disturb a damages award entered by a jury unless it is so grossly excessive or so grossly inadequate 'that it shocks the judicial conscience.'" Orientale, 239 N.J. at 595 (emphasis added). In reviewing a trial court's decision on a motion for additur or a new trial, "an appellate court must pay some deference to a trial judge's 'feel of the case.'" Cuevas, 226 N.J. at 501 (quoting Johnson, 192 N.J. at 282).

Here, plaintiff introduced into evidence personal property inventory worksheets and retail receipts for replacement items to support her claim for personal property damages. Plaintiff testified on cross-examination that all the

32

receipts she presented were for items she purchased after the storm. In denying the motion for additur or a new trial, the court determined found there were

> any number of reasons why [the jury] didn't [award personal property damages]: Perhaps, they didn't believe [plaintiff's] testimony; perhaps, they felt that there needed to be more information submitted with regard to what the market value was; or, perhaps, they relied upon the itemization of information that -- or doc -- items that she obtained after the fact as being not replacement values.

We view the totality of the evidence in the light most favorable to the non-moving party, Jastram v. Kruse, 197 N.J. 216, 229 (2008) (citing Johnson, 192 N.J.at 281), and we give deference to the trial court in these matters. Cuevas, 226 N.J. at 501. We agree with the trial court's analysis that the court cannot second guess the jury's determination not to award personal property damages. We find no error by the trial court in denying plaintiff's post-trial motion.

G.

i.

Plaintiff argues that the trial court erroneously dismissed the claims against the Haddonfield defendants on summary judgment. Plaintiff argues for the first time on appeal that the Haddonfield defendants were responsible for the pin oak which was struck by the black oak and fell onto her house. We find plaintiff's claims unpersuasive.

33

We "will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)). The record shows that this issue was not raised below. In fact, plaintiff's counsel disavowed this trial strategy, because such a theory could have ensnared plaintiff in a comparative negligence trap.

In her complaint, plaintiff stated that she sought "to recover . . . damages from the defendants, [NJAW] for its negligence in maintaining the subject Black Oak and [Haddonfield defendants] for their handling of a dangerous condition." (Emphasis added). Prior to trial, plaintiff's counsel argued against NJAW's comparative negligence defense, positing to the trial court that the pin oak had no causal connection to the damages plaintiff suffered. In argument before the court, the following colloquy ensured:

> [PLAINTIFF'S COUNSEL]: With regard to the way Your Honor articulated counsel's argument that it deals with her pin oak, there's no one to suggest here that the pin oak had anything to do with the causation of this issue. The pin oak didn't start the transition -- or transition from falling. The black oak [fell] on the pin oak. So if she had an obligation to the pin oak, fine. She's the property owner, fine. But the pin oak didn't

34

do anything. It happens to be in place between the black oak, which was diseased, and fell onto the pin oak and knocked [the pin oak] into her house.

So the -- that's a red herring that the pin oak had anything to do with this incident. There's no causation between the condition of the pin oak beforehand and the eventual accident.

THE COURT: Well, if both trees hit her house, then isn't there some damage that can be assessed towards the pin oak and some that's assessed for the black oak?

[PLAINTIFF'S COUNSEL]: Not from a proximate cause. They don't have anybody coming in here saying that because you didn't trim this tree down, your house wasn't completely destroyed. No one is disputing that the black oak knocked the pin oak over. The fact that you happened to be in that -- you know, I'm sitting in that traffic, Judge, and I get rear-ended and I get knocked into the other car in front of me, I'm not at fault for that. I didn't do anything. That car parked there didn't do anything wrong.

"The doctrine of invited error operates to bar a disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be error." N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. at 340 (quoting Brett v. Great Am. Recreation, 144 N.J. 479, 503 (1996)). The doctrine is clearly implicated here. In her attempt to rejoin the Haddonfield defendants, plaintiff

35

cannot argue prior to trial that the pin oak was irrelevant to her theory of the case, then argue on appeal that it is.

ii.

Plaintiff next raises a series of claims on appeal regarding the TCA immunities that the Haddonfield defendants are entitled to raise. She first argues that they should have been estopped from raising TCA immunities, and then, with her theories of liability intact, contends that she should have been able to pursue pain and suffering-related damages. These arguments are without merit. Plaintiff cites to no provision of the TCA in her merits brief or reply brief, and does not address the immunities under which the trial court granted the Haddonfield defendants summary judgment.

"'[A]n issue not briefed is deemed waived.'" Arsenis v. Borough of Bernardsville, 476 N.J. Super. 195, 204 n.3 (App. Div. 2023) (first citing Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2023); and then citing Telebright Corp. v. Dir., N.J. Div. of Tax., 424 N.J. Super. 384, 393 (App. Div. 2012)). Because plaintiff failed to properly raise the applicability of the TCA immunities, we need not address it. It follows that plaintiff's pain and suffering claims against the Haddonfield defendants also are without merit on appeal.

36

Any of plaintiff's remaining claims not addressed here lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

IV.

We turn to defendant's cross-appeal.

Defendant argues that the trial court's decision to permit Jeanette Glennon and Courtney Pederzani "to offer testimony regarding what the condition of the black oak tree was prior to the June 3, 2020 storm" was an abuse of discretion that requires a new trial on liability because defendant was not made aware they would testify. After a review of the record on this issue, we find this argument without merit.

"When faced with a surprise witness, possible sanctions to be explored by the trial court include . . . exclud[ing] the testimony if such an outcome is just and reasonable." Wymbs v. Twp. of Wayne, 163 N.J. 523, 543 (2000) (citing Thomas v. Toys "R" Us, Inc., 282 N.J. Super. 569, 581 (App. Div. 1995)).

> Factors that would "'strongly urge' the trial judge, in the exercise of his discretion, to suspend the imposition of sanctions, are (1) the absence of a design to mislead, (2) absence of the element of surprise if the evidence is admitted, and (3) absence of prejudice which would result from the admission of the evidence."
>
> [Id. at 544 (quoting Westphal v. Guarino, 163 N.J. Super. 139, 146 (App. Div. 1978)).]

37

"The discovery rules 'were designed to eliminate, as far as possible, concealment and surprise in the trial of lawsuits to the end that judgments therein be rested upon the real merits of the causes and not upon the skill and maneuvering of counsel.'" Id. at 543 (quoting Evtush v. Hudson Bus Transp. Co., 7 N.J. 167, 173 (1951)).

In permitting the testimony of the witnesses, the court found that, because defendant had already deposed both witnesses four months before trial, there would be no surprise from letting them testify.

The trial court properly exercised its discretion when it permitted plaintiff's witnesses, Glennon and Pederzani, to testify.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2181-23